## UNITED STATES v. SCHWEPPE.
### No. 8594.

Circuit Court of Appeals, Eighth Circuit.
Feb. 12, 1930.

T. J. Williamson, Atty., U. S. Veterans' Bureau, of Washington, D. C. (William L. Vandeventer, U. S. Atty., and Harry L. Thomas, Asst. U. S. Atty., both of Kansas City, Mo., William Wolff Smith, Gen. Counsel, U. S. Veterans' Bureau, J. O'C. Roberts, Asst. Gen. Counsel, U. S. Veterans' Bureau, and James T. Brady, Atty., U. S. Veterans' Bureau, all of Washington, D. C., on the brief), for the United States.

Lawrence E. Goldman, of Kansas City, Mo. (Frank R. Daley, of Kansas City, Mo., on the brief), for appellee.

Before KENYON and BOOTH, Circuit Judges, and REEVES, District Judge.

KENYON, Circuit Judge.

This is an action brought by appellee to recover certain war risk insurance granted him by the government while he was in the military service of the United States in the World War. Said insurance was for $10,000, payable in the sum of $57.50 each month in the event of his becoming totally and permanently disabled during the time the same was in force. He was discharged from the Army on May 8, 1919. Premiums were paid to cover the month of discharge. The period of grace, for payment of premiums, ended at midnight July 1, 1919.

In October, 1920, appellee secured a reinstatement of $4,000 of the original $10,000 of insurance. On May 1, 1926, $2,000 of

said insurance was converted into a twenty-year endowment policy.

The case was submitted to the jury, and the jury found that appellee was totally and permanently disabled prior to the time the contract of insurance would have lapsed for failure to pay premiums.

The court decided, as a matter of law, that the reinstatement of the insurance in October, 1920, and the conversion later of the reinstated insurance into an endowment policy, did not operate as an estoppel to prevent appellee claiming he was totally and permanently disabled prior to July 1, 1919.

The first question presented by appellant is whether there was substantial evidence upon which a jury could base a verdict that appellee was permanently and totally disabled prior to July 1, 1919. Appellee contends that this question is not before us under authority of Mansfield Hardwood Lumber Co. v. Horton, 32 F.(2d) 851, because of the claimed inadequacy of the motion made at the close of all the evidence, which was as follows: "At the close of all the evidence defendant requests the Court to instruct the jury that under the pleadings, the law and the evidence, its verdict must be for the defendant."

■ The motion here under consideration is broader than the one considered in Mansfield Hardwood Lumber Co. v. Horton, supra, and is governed, we think, by the decision in Ozark Pipe Line Corp. v. Decker (C. C. A.) 32 F.(2d) 66, 67, where the requested declaration of law was as follows: "The court declares the law to be that under the pleadings and evidence in this case, the plaintiff is not entitled to recover against the Ozark Pipe Line Corporation, and the decision and judgment of the court is in favor of the defendant." This was held sufficient (the same judges sitting as in Mansfield Hardwood Lumber Co. v. Horton, supra) to save the question for review. See, also, St. Louis v. Western Union Telegraph Co., 148 U. S. 92, 13 S. Ct. 485, 37 L. Ed. 380. The form of requested instruction was, in our judgment, sufficient to preserve for the consideration of this court the question as to whether appellee was entitled to have the jury pass on the proposition of total disability prior to July 1, 1919.

We have carefully read and considered the evidence. There is no need here to set out any review thereof. We are satisfied the court committed no error in submitting the case to the jury.

■ The other question in the case is the effect of the attempted reinstatement of $4,000 of the insurance and the conversion of $2,000 thereof into an endowment policy. The reinstatement was made in October, 1920. If appellee was permanently and totally disabled on July 1, 1919, his insurance had passed into the status of a claim. There was no more insurance, and hence nothing to reinstate or convert. The jury's verdict stands that appellee was totally and permanently disabled on July 1, 1919. Hence at that time he had a claim for the amount of the insurance contracted by the government to be paid to him if he became totally and permanently disabled during the time the insurance was in effect.

Did his subsequent actions prevent him from asserting that he was so disabled? At the time he secured the reinstatement of $4,000 of his policy, the law provided (Act of October 6, 1917) (c. 105, 40 Stat. p. 399, § 13) "that the director, subject to the general direction of the Secretary of the Treasury, shall administer, execute, and enforce the provisions of this Act, and for that purpose have full power and authority to make rules and regulations, not inconsistent with the provisions of this Act, necessary or appropriate to carry out its purposes. * * *"

Section 404, chapter 105, 40 Stat. 410, is as follows: "That during the period of war and thereafter until converted the insurance shall be term insurance for successive terms of one year each. Not later than five years after the date of the termination of the war as declared by proclamation of the President of the United States, the term insurance shall be converted, without medical examination, into such form or forms of insurance as may be prescribed by regulations and as the insured may request. Regulations shall provide for the right to convert into ordinary life, twenty payment life, endowment maturing at age sixty-two and into other usual forms of insurance and shall prescribe the time and method of payment of the premiums thereon, but payments of premiums in advance shall not be required for periods of more than one month each and may be deducted from the pay or deposit of the insured or be otherwise made at his election."

Under this act certain regulations in force in October, 1920, relative to reinstatement of lapsed insurance, were as follows:

"Term insurance, which has lapsed or has been cancelled before July 1, 1920, may be reinstated, or reinstated and converted, by

the applicant, during his lifetime, by making tender of the premiums as required in paragraphs 2 and 3 hereof, and filing with the Bureau of War Risk Insurance an application for reinstatement signed by him and under the following conditions:

"(a) Within eighteen months succeeding the month of the discharge or resignation of the applicant but prior to January 1, 1921, provided that the applicant is in as good health as at the date of discharge or resignation, or in his application. * * * At the expiration of the grace period, whichever is the later date, and so states in his application. * * *"

A new section was added to article 4 of the War Risk Insurance Act, known as section 408, which became the law August 9, 1921 (42 Stat. p. 156), with relation to application for reinstatement of lapsed yearly renewable term insurance, which provided that the applicant during his lifetime must submit proof satisfactory to the Director showing the service origin of the disability or aggravation thereof, and that the applicant was not totally and permanently disabled.

At the time that appellant applied to have a reinstatement of $4,000 of insurance granted under provisions of the War Risk Insurance Act, he certified "that I am now, to the best of my knowledge and belief, in as good health as I was at the date of my discharge or at the expiration of the grace period, which ever is the later date."

At the time of discharge the appellee answered the question, "Have you any reason to believe that at the present time you are suffering from the effects of any wound, injury, or disease, or that you have any disability or impairment of health, whether or not incurred in the military service?" "No." That statement may or may not have been truthful. It may be true that he was in the same condition in October, 1920, that he was at the date of discharge or the expiration of the period of grace on July 1, 1919, or that he did not know his real condition at the time he was discharged. In the case of Stevens v. United States, 29 F.(2d) 904, this court had before it the question of reinstatement operating as an estoppel where the reinstatement was under the Act of 1921 (42 Stat. 156). As we have heretofore pointed out, that act required proof that the applicant was not permanently and totally disabled at the time of his application. That was the test in the Stevens Case, and the court held that, inasmuch as the reinstatement

of the insurance had been had upon proof furnished by applicant that he was not permanently and totally disabled, he was estopped to claim in a suit on the former insurance certificate that he was so disabled. No such requirement was in the act in force at the time of appellee's reinstatement. Appellee was required merely to certify that to the best of his knowledge and belief he was in as good health as he was at the time of the expiration of the period of grace, to wit, July 1, 1919. This he did, and we certainly cannot say from this record that he deliberately intended to deceive the government. While mutual mistake is not pleaded, it is apparent, in the light of the jury's verdict, that there must have been a mistake on the part of the government, as well as appellee, as to the nature and extent of his disability at the time of his discharge. Tuberculosis, with which he was afflicted, is an insidious enemy, its exact grip upon the afflicted one not being easy of ascertainment, and the victim not always appreciating the extent of its hold upon him, and generally deluded with the idea of ultimate recovery. Appellant does not seem to rely very strongly upon the reinstatement in itself as being sufficient to constitute an estoppel, but urges that it, in connection with the conversion of $2,000 term insurance effective May 1, 1926, estopped appellee from asserting a permanent and total disability prior to that date.

The theory of the government as to the conversion of $2,000 of the $4,000 into an endowment policy is that insurance could not have issued to one who was permanently and totally disabled any more than to one who was dead, and that it must have been assumed by the appellee and the government at the time of the conversion of $2,000 of the term insurance that appellee was not permanently and totally disabled, and that by requesting such conversion appellee impliedly so represented.

The Act of 1924, § 301 (43 Stat. 624 [38 USCA § 512]), provides that all war term insurance shall cease on July 2, 1926, and that not later than July 2, 1926, all term insurance shall be converted without medical examination into such form of insurance as may be prescribed by regulations and as insured may request.

The strongest case for the government is United States v. Buzard (C. C. A.) 33 F. (2d) 883. The reinstatement there was prior to the statute which was controlling in the Stevens Case. The reinstatement was on the theory that the insured was in as good health

as at the date of the discharge. There was a finding by the jury of permanent and total disability. The court considered only the question of whether the finding of total and permanent disability was ipso facto conclusive against the defenses pleaded by the government. It held that, in the absence of actionable fraud or mistake, the contract of converted insurance would supersede the earlier contract, and that, as Buzard had certain rights thereunder and the government certain obligations, in the condition of the record presented Buzard could not recover under the original war risk insurance. It calls attention to the fact that Buzard had not offered to surrender the rights which he had acquired under the new contract providing for the converted insurance. In that respect the case differs somewhat from this, as here appellee's counsel in open court offered to surrender to the government the converted insurance. A number of opinions in other cases involving similar questions were filed by the Circuit Court of Appeals of the Ninth Circuit on the same day as the Buzard Case, and in one of them, United States v. Allen, 33 F.(2d) 888, the court stated that it had held in the Buzard Case that a recovery for total and permanent disability could not be had upon that portion of an original war risk insurance policy upon which there had been a renewal based upon the implied agreement that at the time of the renewal the veteran was not totally and permanently disabled.

If it appeared from the record here that appellee had full knowledge of his condition at the time of reinstatement or at the time of conversion of the alleged insurance, there would be much force in appellant's contention. However, appellee, in making application for the converted insurance, stated in writing that he was disabled on account of injury or disease. He did not attempt to state the extent thereof, nor apparently was he required to do so under the act. No medical examination was necessary, and the record fails to disclose that there was any such examination. In the light of the verdict of the jury, it is apparent that the proceedings subsequent to July 1, 1919, were the result of a mutual mistake on the part of the government and the appellee. There was no insurance to be reinstated and none to be converted. It seems to us that it would work a serious injustice to hold that, where there was a mutual mistake on the part of the government and the appellee, such mistake should be permitted to operate as an estoppel as to one of the parties, and prevent him recovering for his total and permanent disability. Some courts have held that war risk insurance contracts and the law under which they were issued should be construed liberally in favor of the soldier. United States v. Cox (C. C. A.) 24 F.(2d) 944; United States v. Eliasson (C. C. A.) 20 F.(2d) 821. The government has pursued a liberal policy toward the soldiers who willingly offered their lives to the government in its hour of trial, and the doctrine of estoppel under the circumstances here presented ought not to be applied. We think the trial court was correct in holding there was no estoppel.

In the Buzard Case the court points out the process of future procedure with reference to rescinding converted insurance contracts for fraud or mistake. Even if the theory of the Buzard Case is correct, we do not see any particular reason why the judgment here should be reversed and the case sent back for trial as to the question of setting aside the converted insurance contract because of mutual mistake. The matter can be adjusted by requiring deliverance of the policy of $2,000 as a condition of the affirmance of the judgment. It is apparent that appellee should not be permitted to enforce the terms of the $2,000 policy and at the same time hold the original insurance certificate, as it stands established that appellee was prior to the expiration of the period of grace totally and permanently disabled. His insurance had ended, and there was no insurance to be reinstated in October, 1920, and none to be converted into other forms of policy in 1926. Appellee offered in open court to surrender the existing contracts of insurance, except the one upon which suit was brought. The judgment should have been for $10,000, payable at the rate of $57.50 per month, instead of $8,000. As no objection was made to the judgment on the part of the appellee, the question is not before us, though we suggest that the trial court may find a way to correct this situation. We affirm the judgment upon condition that within sixty days from the date of the filing of this opinion appellee deposit the $2,000 policy of alleged converted insurance with the clerk of the District Court to be delivered to the proper officer of the government, with a disclaimer of any right to recover thereon. We remand the case to the trial court for such action as may be appropriate to accomplish the result herein indicated as to the $2,000 policy.

Affirmed and remanded.