**UNITED STATES v. PHILLIPS.**

**No. 8748.**

Circuit Court of Appeals, Eighth Circuit.

Nov. 29, 1930.

690

Lawrence A. Lawlor, Atty., U. S. Veterans' Bureau, of Washington, D. C. (William L. Vandeventer, U. S. Atty., and Harry L. Thomas, Asst. U. S. Atty., both of Kansas City, Mo., and William Wolff Smith, Gen. Counsel, U. S. Veterans' Bureau, and James T. Brady, Atty., U. S. Veterans' Bureau, both of Washington, D. C., on the brief), for the United States.

Ruby D. Garrett, Fred Ruark, and George F. Anderson, all of Kansas City, Mo., for appellee.

Before KENYON, BOOTH, and GARDNER, Circuit Judges.

KENYON, Circuit Judge.

William H. Phillips, hereinafter called insured, was a veteran of the World War. He was granted while in the service a war risk insurance policy in the sum of $10,000, payable in monthly installments, in case of permanent disability. In the event of death payments were to be made to his father (appellee). He died March 6, 1923, of pulmonary tuberculosis. The government, denying the claim of permanent total disability, refused to pay the policy. Action was brought by William O. Phillips as designated beneficiary to recover the monthly installments accruing after the insured's death. William O. Phillips, as administrator of insured's estate, intervened to recover installments that were claimed to have accrued prior to death. A jury was waived by written stipulation. Proper requests for findings of fact and conclusions of law were made by the government to preserve for review the questions here argued.

The trial court decided for the plaintiff, making certain findings of fact, among which this:

"That while said insurance was in force said William H. Phillips became totally and permanently disabled as the result of pulmonary tuberculosis, which disease existed at the time of his discharge from the military service, May 7, 1919, and rendered it impossible for him to follow continuously any substantially gainful occupation at the time of his said discharge from the military service and at all times thereafter to the date of his death, and said contract of insurance matured on the 7th day of May, 1919, and on which date an installment of $57.50 became due and owing to said William H. Phillips, and that said installments of $57.50 became due and owing to him each month thereafter to the date of his death, being 48 of said installments and aggregating the sum of $2,760.00, had accrued and become due and payable to him and is now owing to his estate and the same remains unpaid."

The court entered judgment in favor of appellee as administrator, and also for the payments due him as beneficiary after the death of William H. Phillips.

[■] Complaint is made by the government that certain evidence was excluded tending to show that insured knew of his right to compensation for disability and yet made no claim for the same. There was no error in excluding this evidence. Not all soldiers claimed compensation, and the fact that such compensation may not be claimed is no evidence that the soldier might not have been entitled to it. Complaint is made also that the appellee was permitted to show some statement of the insured as to his ability to work. Unless such statement was a part of the res gestæ or was an expression of his feeling it would not be admissible, but we think there was no prejudice resulting therefrom; likewise the government complains of evidence permitted to be introduced that a thirteen year old boy could perform work which the insured did. We think the government's position as to this is correct, and that such evidence had nothing whatever to do with the case, but likewise it seems to us it was entirely immaterial and could work no prejudice.

[■] The government requested the following declaration, which was refused by the court: "That under the pleadings, the law and the evidence, judgment must be for the defendant." Proper exception was preserved. This is a sufficient request to save the question as to substantial evidence for review in this court. Ozark Pipe Line Corporation v. Decker (C. C. A.) 32 F.(2d) 66; United States v. Schweppe (C. C. A.) 38 F.(2d) 595.

No premium was paid on the policy after May, 1919. Protection therefore under the policy, taking into consideration the period of grace, provided by the government, terminated at midnight on the last day of June, 1919, unless prior to that time the insured became permanently and totally disabled.

The question before the trial court therefore for its determination and controlling in its conclusion was whether or not insured became permanently and totally disabled before midnight July 1, 1919.

We do not weigh the evidence, but inquire merely, in view of the waiver of a jury in writing, whether there was substantial evidence to sustain the findings of the court.

The evidence on this subject is conflicting, and there naturally is doubt whether the permanent disability did not come upon insured after the policy had lapsed. We have carefully reviewed the evidence and cannot say that there is no substantial evidence in the record to sustain the findings of the court as to permanent and total disability during the time the policy was in effect. It would not be questioned that for some time before death insured was totally disabled. Just when that total disability occurred is the problem of doubt. It appears that when he went to war he was a robust and healthy boy. There was "nothing too hard for him to do," as one witness expressed it. The evidence shows that he carried on during the war and came back from it practically a wreck, with hollow cheeks, a severe cough, a shortness of breath after exercise, and night sweats; that he worked with difficulty and was completely worn out and in a condition of continuous fatigue. At a dinner given at Kansas City to the returned soldiers shortly after his return, he was compelled to leave the room on account of the severity of a coughing spell. These coughing spells followed him to the time of his death. He went to the home of his parents in Arkansas in May, 1919. The testimony shows he was weak and short of breath, and having night sweats, but notwithstanding his weakness he returned to Kansas City in about ten days and obtained employment at the Smith-McCord-Townsend Dry Goods Company. The evidence shows that he was in a condition of general exhaustion most of the time and worked with difficulty at Smith-McCords. His mother came to Kansas City in August, 1919, and took him back to Arkansas in November, 1919. He remained in Arkansas with his parents until he returned to Kansas City in September, 1921, doing some light work in helping his father with a small sawmill which was operated one and one-half days a week. He secured employment at Montgomery Ward & Co. in Kansas City in October, 1921, and continued in their employ until May, 1922. He had formerly been an employee of this company. There is no doubt that he did work continuously for a period of time at Montgomery Ward & Co., but he was in poor health during all this time and they were compelled finally to take measures to lighten his work. In May, 1922, the company's doctor pronounced him suffering from pulmonary tuberculosis. The effect of his disability on his general efficiency was such that he could no longer be employed. He quit work for Montgomery Ward & Co. and went to a government hospital.

The government contends that the evidence of his working is so overwhelming that the court should have given a peremptory instruction to the jury. If the mere fact that the insured did work is conclusive evidence that he was not permanently and continuously disabled, then there should have been no recovery on this policy. The term "total and permanent disability" does not mean that the party must be unable to do anything whatever; must either lie abed or sit in a chair and be cared for by others. The test laid down in the cases is well stated in United States v. Sligh (C. C. A.) 31 F.(2d) 735, 736, as follows: "The term 'total and permanent disability' obviously does not mean that there must be proof of absolute incapacity to do any work at all. It is enough if there is such impairment of capacity as to render it impossible for the disabled person to follow continuously any substantially gainful occupation." Some persons, who are totally incapacitated for work, by virtue of strong will power may continue to work until they drop dead from exhaustion, while others with lesser will power will sit still and do nothing. Some who have placed upon them the burdens of caring for aged parents or indigent relatives, feeling deeply their responsibility and actuated by affection for those whom they desire to assist, will keep on working when they are totally unfit to do so. The mere fact that insured did work for Smith-McCord-Townsend Dry Goods Company and also for Montgomery Ward & Co. does not necessarily prove that he could follow continuously a gainful occupation. The evidence shows that this work was carried on under great difficulty and was a light class of work.

Dr. Martin testified in behalf of appellee that he examined the insured on three occasions in 1919. His evidence is exceedingly important. He first examined insured in August, 1919, and testified that he was very weak and that he advised him to take it quite easy; that he was in a run-down condition, somewhat emaciated, his color not good; that

692

he was pale and anemic; that when he examined him in 1921 there was no improvement in his color; that he grew worse, and that he was worse in 1921 than when he examined him in 1919, when he formed the opinion that he was able to do light work, but he did not think he could do any heavy work, and that he advised him to do some light work. His opinion was expressed as follows: "I don't think he was able to do much work."

A hypothetical question was put to Dr. Martin setting forth the condition of the insured as to sweats, lack of energy, exhaustion, shortness of breath, rapid pulse, and anemic complication, and wound up with the query whether such a person would be capable of doing several hours' work of any kind continuously. Concerning this the following took place:

"Mr. Garrett: Yes, sir. Basing your answer on these facts, Doctor, now state whether or not in your opinion a person who is afflicted so could continuously, for several hours, follow any kind of employment. A. I don't believe he could."

We quote also from the record, testimony of Dr. Martin as follows:

"Mr. Garrett: Now, you may answer that question. If a man suffering from this condition, in your judgment, would be able to perform any kind of work for three hours continuously without rest day after day? A. I don't think he could."

The evidence tends to show that while the insured did considerable light work he was afflicted with active pulmonary tuberculosis; what he needed was complete rest, but he was unable to have it. In carrying on the work that he was trying to do he was impairing his health. While realizing that the evidence is not absolutely convincing on the question, we cannot say under this record that there is no substantial evidence to show that insured was so disabled prior to July 1, 1919, that he could not follow continuously any gainful occupation. That is the test.

█ In view of the policy of the law often expressed by the courts that these policies are to be liberally construed, we resolve any doubts we have in the matter in favor of the insured. United States v. Eliasson (C. C. A.) 20 F.(2d) 821; United States v. Cox (C. C. A.) 24 F.(2d) 944; United States v. Sligh (C. C. A.) 31 F.(2d) 735; United States v. Schweppe (C. C. A.) 38 F.(2d) 595.

The judgment of the trial court is affirmed.

J. H. Peterson, O. R. Baum, and D. Worth Clark, all of Pocatello, Idaho, for appellant.