## UNITED STATES v. TYRAKOWSKI.

### No. 4469.

Circuit Court of Appeals, Seventh Circuit.
May 27, 1931.

George E. Q. Johnson, U. S. Atty., and Joseph A. Struett and Thomas Dodd Healy, Asst. U. S. Attys., all of Chicago, Ill.

Charles Hudson and W. J. Doyle, both of Chicago, Ill., and Frank C. Wade, of Terre Haute, Ind., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge.

Appellee, while in active service during the World War, was granted war risk term insurance in the amount of $10,000, payable, in the event of death or total permanent disability occurring while the contract was in force, in monthly installments of $57.50. He was discharged from service July 14, 1919, and premiums were paid on the policy to and including July, 1919, but none were afterwards paid. The policy therefore lapsed, unless appellee became totally and permanently disabled on or before August 31, 1919.

Appellee, filed the complaint in this action on January 2, 1929, in which he sought to recover on the policy for a total permanent disability which he alleges occurred to him on or prior to August 31, 1919.

The government by its answer admitted the issuance and delivery of the policy and the payment of the premiums as above stated, but in effect denied the other allegations of the complaint. By written agreement of the parties, the cause was submitted to the court for trial without a jury.

At the close of appellee's evidence, and also at the close of all the evidence, appellant filed a written motion for the court to find the issues for appellant on the ground that there was no substantial evidence to justify any other finding. The court overruled each of such motions, and appellant separately excepted to such rulings, and thereupon the court rendered judgment for appellee. The only issue in controversy in the trial was whether or not appellee was totally and permanently disabled on or before August 31, 1919. The court, in rendering judgment, found that he was thus disabled on the date of his discharge, July 14, 1919, to which finding and judgment of the court appellant excepted, and prosecutes this appeal.

In considering the subject of war risk insurance, all reasonable presumptions must be indulged in favor of the insured; but it must also be borne in mind that the basis of this action is a contract, and the parties' rights are governed by its terms. If appellee is entitled to recover in this action, it must be on the theory that the government is liable to him on the contract, and the burden was upon him; in the trial court, to prove by a

preponderance of the evidence that he had brought himself within its terms. United States v. Le Duc (8th C. C. A., March 19, 1931) 48 F.(2d) 789. The District Court having found that appellee was totally and permanently disabled on or prior to August 31, 1919, the only question before us is whether or not there is any substantial evidence in the record which supports such finding.

Pursuant to section 13 of the War Risk Insurance Act (40 Stat. 399, as amended by Act May 20, 1918, § 1, 40 Stat. 555), the Treasury Department issued Treasury Decision No. 20, defining the term "permanent and total disability" as follows: "Any impairment of mind or body which renders it impossible for the disabled person to follow continuously any substantially gainful occupation shall be deemed, in Articles III and IV, to be total disability. Total disability shall be deemed to be permanent whenever it is founded upon conditions which render it reasonably certain that it will continue throughout the life of the person suffering from it."

In United States v. Phillips (C. C. A.) 44 F.(2d) 689, 691, it was said: "The term 'total and permanent disability' does not mean that the party must be unable to do anything whatever; must either lie abed or sit in a chair and be cared for by others. The test laid down in the cases is well stated in United States v. Sligh (C. C. A.) 31 F.(2d) 735, 736, as follows: 'The term "total and permanent disability" obviously does not mean that there must be proof of absolute incapacity to do any work at all. It is enough if there is such impairment of capacity as to render it impossible for the disabled person to follow continuously any substantially gainful occupation.'"

■■ In order for appellee to recover, it was not necessary for him to prove that such disability occurred while he was serving in the war, nor that it was occasioned by such services. It is sufficient if it occurred from any cause prior to lapse of his policy at midnight on August 31, 1919. On the other hand, the policy does not cover any total permanent disability which began after August 31, 1919, even though it was caused by his service in the war.

■ It appears from appellee's testimony that he enlisted on July 26, 1918, and while in France he was kicked in the chest by a horse, and suffered continually from this, on several occasions spitting blood. He was given something to rub on the bruise, and continued his activities. He weighed 150 pounds when he enlisted. He was discharged June 14, 1919, at which time his physical condition was poor, he was becoming weak, had pain in solar plexus, felt dizzy, and had a cough. He went home to his parents, but did no work because he could not, as he had a pain in his chest and was weak. The first doctor he consulted was Dr. Buchanan on July 28, 1919, who referred him to the Veterans Bureau, but he did not go there until in 1924. In the meantime he did light work in the city, but not continuously, because they laid him off, and told him he was not able to work, and he could not work because he was weak and had a pain in his chest. He next consulted a Dr. Keetlie in 1924, who referred him to the Veterans Bureau, and he went to one at Milwaukee, where he was advised to go home. He did so, and tried to work and help his folks, but could not, as he was sick, dizzy, and had a pain. He next attempted to call on a doctor, in 1927, at the Veterans Bureau, but was not examined. After calling there on two consecutive days, and not being able to see a doctor, he became disgusted and never returned.

Appellee worked at intervals from the date of his discharge until 1927. He worked at a mechanical laundry for about eight months, off and on—about three days a week for about four months—at $30 a month, but could not work continuously because he had a pain and became weak and dizzy. For the last three months he was kept on the pay roll but did not work. He worked for his brother-in-law in 1927 for about two weeks, taking care of his garage, but could not stand the work on account of the gas choking him. He also worked twice a week for three months for his father in a butcher shop, but was ordered by the board of health to stop working there. He has not attempted to work since February, 1930. He is not so strong now as he was when discharged from war service. He is weak, has dizzy spells, and pain in his chest. His normal weight is 154, but he now weighs 125 pounds.

On cross-examination appellee testified that he went to his parents on a farm in about 1922, and remained there until 1925, and tried to help them. He did not work all day every day, but tried to work whenever there was work for him to do. He helped with the threshing, and went out and loaded his own load and brought it in and pitched it to the

machine. His family was engaged in killing cattle and selling them to the Chicago market. He helped them part of the time and tried to work off and on. After leaving the farm, he tried to get a position as street car conductor, but failed, and stayed at home and did odd jobs. He cut meat and tended shop for his brother, who was a butcher. He was employed in the Post Office Department from July 19, 1927, to September 30, 1927, but not full time—was there each working day but did not work every day. After leaving his brother-in-law's garage, he could not recollect where he had worked. He started working in his father's butcher shop after 1928, and worked for the laundry company in 1926 for a period of about seven months, at $30 a month. His occupations before he went into military service were butchering and farming, and those were most of his occupations practically continuously since he left the Army, except when he moved to Chicago. He did work on a farm in 1920. He had no scar on his chest, and never had, because the horse that kicked him was not shod.

Appellee introduced the report of his physical examination made by the United States Veterans Bureau on August 14, 1922, following his application for compensation, filed on August 8, 1922, on account of broken ribs caused by the kick of a horse while in France. The subjective symptoms, but not the diagnosis, shows that he was short-winded, unable to take a deep breath, and had a pain in his left chest on stooping. The report further shows that he had not been sick since his discharge, that he had worked as farmer since July, 1920, and that he did not work from the date of his discharge until July, 1920, because he did not care to work. The examination showed negative for tuberculosis; healed bruise on left chest; distinct excess of peribronchial thickening; heart of drop type, normal in size, shape, and position. The diagnosis was chronic mitral regurgitation, but well compensated. It was the opinion of the examiner that claimant was unable to resume his prewar occupation on account of his heart.

Appellee also introduced the report of his physical examination made by the United States Bureau on June 10, 1925. The subjective symptoms, but not the diagnosis, show shortness of breath, sleeplessness caused by pains in chest, occasional night sweats, poor appetite, expectoration of bloody sputum after working hard, and occasional cough.

The examination shows no external evidence of trauma on chest, and no distortion of outline of ribs or sternum. The diagnosis was mitral insufficiency, very well compensated, and chronic bronchitis.

A letter from the United States Veterans Bureau at Milwaukee, bearing date of January 30, 1925, was introduced in evidence by appellee relative to his claim, filed on August 8, 1922, for compensation for chest disability and broken arches, in which the writer states that a careful examination of the Adjutant General's office records does not show that appellee was ever treated for any disease of such nature while in service, but that an examination of him on August 14, 1924, shows a healed bruise on left chest, valvular heart disease, and mitral regurgitation.

Dr. Buchanan, appellee's physician, examined him on July 28, 1919. He heard the history of the case as related by appellee, and noted a depression on left side of chest and a bulge on the right side, also a scar which showed an injury. He examined appellee casually on May 28, 1930, the morning of the trial, and said he looked thinner and paler and not so good as in July, 1919. Based on this information, witness stated that it would then be injurious for appellee to work at indoor or hard work, and that such condition most likely existed since his first examination on July 28, 1919, although he did not really know.

Dr. Eales, appellee's witness, testified that he examined appellee on May 25, 1930, and found a bulged sternum with a depression on the left side which looked like the result of an old injury; some rales; and one degree of temperature, which was the result of some lung condition, but no spots on the lungs. Such conditions, he testified, can be acquired by common cold or infected throat. He examined the throat only externally, and made no examination for tuberculosis; and he stated that he thought it impossible now for appellee to do manual labor without injury.

Dr. Du Bois, another of appellee's witnesses, testified that he examined appellee on May 27, 1930, and he appeared thin, with sunken face, but that his general appearance was fairly good. His heart showed organic valvular condition and regurgitation, but this condition could not result from traumatic causes, and witness was unable to tell how long such heart condition had existed. The witness found the lungs and abdomen negative, except tenderness and rigid rectal mus-

cles. He made no positive scientific diagnosis, due to lack of time. There was no scar on the sternum, and the depression, in his opinion, was congenital. His diagnosis was gastro duodenal ulcer, probably of long standing, but he did not say how long, and he could not state definitely whether such ulcer could result from traumatic causes, though he had never known of such a case. He testified that appellee could not now do physical labor on account of his heart and stomach.

Appellee's witness James testified that he employed appellee in May, 1926, to work for Mechanics Laundry & Supply Company at $25 a week, and the employment continued until one or two weeks before Christmas of 1926; that appellee's work was satisfactory while he was there, and he averaged working about three days a week, and that, when he worked, he did his work all right; that, if he had heavy work, he would be away two or three days afterward; that he had never looked well since witness knew him; that sometimes he worked two or three weeks at a time without laying off, but once he was off for six weeks; and that witness finally let him go on account of his absences.

Witness Tafel, a brother-in-law of appellee, was an automobile dealer. He testified that he employed appellee as a mechanic at $30 a week from 1927 to 1928, but docked him when he was not there. Appellee was away from two to three days a week, and complained of sickness and could not eat, and could not work at times on account of sickness.

Mrs. Tafel, a sister, testified that appellee was in good physical condition when he enlisted; that she saw him the second day after his discharge, and his physical condition was poor and he had no appetite; that he had worked off and on since his discharge.

The only direct evidence on appellee's condition on July 31, 1919, is that of himself, his sister, and Dr. Buchanan. That of the two witnesses last named is almost negative in its effect. The only question presented to us is whether or not there was substantial evidence submitted to the effect that appellee was totally and permanently disabled on or before July 31, 1919. We think appellee's testimony alone prevents us from answering this question in the negative, in view of the Treasury Department's definition of total disability. It is true he has made conflicting statements in his testimony, in his discharge, and in his statements made at the times of his applications for compensation. Which, if any, are true, is not within our province to decide. Those matters were questions of fact for the trial court. From the date of his discharge, we find him making practically the same complaint as to pain and suffering, and the doctors are not entirely agreed as to his ailment. He testified positively that he was not able to work continuously, and for that reason he was unable to hold a position for any appreciable length of time. The fact that he worked at many different places and occupations in some degree supports this statement.

We do not wish to be understood as saying that the allegations of the complaint were proved by a preponderance of all the evidence, for that was a matter for the trial court to decide; but we do say that appellee's testimony constituted substantial evidence of his total disability. The term "substantial evidence" is not used in the sense of reliability, but rather in contradistinction to the term "scintilla of evidence." His evidence cannot be disregarded, although it is not such as to inspire complete confidence. Practically all the evidence except his own deals with his condition at a much later date than August 31, 1919. It was competent as bearing on the matter of permanency, and must be considered as substantial. It is true the doctors were not perfectly agreed in their diagnoses, but the combined diagnoses show that, at the time of the trial, appellee was suffering from valvular heart trouble, chronic bronchitis, and duodenal ulcer, and that he was unable to follow continuously any substantially gainful occupation. Of course, they do not attempt to say that these diseases, or any of them, were present on August 31, 1919, nor do they say that they were or could be caused by the kick of a horse in the abdomen—indeed, one of his own physicians said such a blow could not cause the heart trouble, and he had never heard of a duodenal ulcer being caused in that manner. But, regardless of the doctors' testimony, appellee says that he was suffering on the trial date in the same manner, but in a greater degree, as he was on August 31, 1919. He does not attempt to classify his disease by name, and it is not necessary for him to do so. Neither is it necessary for him to trace its cause. He says that he thinks it was caused by the kick, of course, and the evidence hardly supports this statement; but, regardless of this contradiction, his testimony shows that he was suffering

from something at the time of his discharge, regardless of its name or cause, and there is evidence tending to show that the disability was total and permanent, and we are compelled to hold that such evidence amounted to more than a scintilla and was substantial, regardless of what our views may be as to its weight and reliability.

While realizing that the evidence is not as convincing as we might wish or as we might require if we were the trier of the facts instead of a reviewer of the trier's facts, yet we cannot say under this record that there is no substantial evidence to show that insured was so disabled prior to August 31, 1919, that he could not follow continuously any gainful occupation. That is the test. United States v. Phillips (C. C. A.) 44 F.(2d) 689; United States v. Eliasson (C. C. A.) 20 F.(2d) 821; United States v. Cox (C. C. A.) 24 F.(2d) 944; United States v. Sligh (C. C. A.) 31 F.(2d) 735; United States v. Schweppe (C. C. A.) 38 F.(2d) 595.

Where a case is tried by the court without a jury, its findings upon questions of fact are conclusive. It matters not how convincing the argument is that upon the evidence the findings should have been different. Stanley v. Supervisors of Albany County, 121 U. S. 535, 7 S. Ct. 1234, 30 L. Ed. 1000; Dooley v. Pease, 180 U. S. 126, 21 S. Ct. 329, 45 L. Ed. 457.

A review for lack of substantial evidence to support the findings and judgment must be preceded by motion for judgment on that ground. Fed. Intermediate Credit Bank of Omaha v. L'Herisson (C. C. A.) 33 F.(2d) 841. Such a motion was made in this case.

Appellant contends that the court erred in permitting Dr. Buchanan to testify as to whether or not appellee, on May 28, 1930, was able to follow continuously a substantial, gainful occupation without injuring his health, on the theory that he was asked to base his answer, not only on his examinations, but also upon the history of the case and subjective symptoms. It was the first examination by Dr. Buchanan on July 28, 1919, at which the history of the case was given. That examination was not made for the purpose of testifying as an expert, but rather as the treatment of a patient, and in such event the declarations of the patient are admissible. Greinke v. Chicago City Ry. Co., 234 Ill. 564, 85 N. E. 327.

Judgment affirmed.