## BURGOYNE v. UNITED STATES.
### No. 5309.

Court of Appeals of District of Columbia.
Argued Feb. 2, 1932.
Decided March 14, 1932.

Wm. A. Foley, James P. Donovan, Hugh M. Frampton, and Charles Linkins,[1] all of Washington, D. C., for appellant.

Leo A. Rover, John W. Fihelly, A. Hinderliter, and Lawrence A. Lawlor, all of Washington, D. C., for the United States.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

GRONER, Associate Justice.

Appellant was a soldier in the Regular Army of the United States from February, 1917, to June 24, 1919. After the United States entered the World War, he applied for and was granted a policy of war risk insurance, and paid the premiums thereon until his discharge, the effect of which was to keep the policy alive until July 31, 1919. In his petition filed in the Supreme Court of the District September, 1927, he alleged that while serving in France he was twice gassed, as a consequence of which he contracted pulmonary tuberculosis and became, at the time of his discharge, totally disabled from following any gainful occupation.

The appeal is taken under the provisions of the pauper act, and the record is not printed. Much of it that would be helpful in determining the correctness of the excepted rulings of the court below is omitted, but enough appears to make it, we think, our duty to reverse the judgment and award appellant a new trial.

The first three assignments relate to the admission by the court, over appellant's objection, of certain hospital reports and doctors' certificates. It is insisted on behalf of appellee that as these were public records they were on that account admissible. We are not quite sure in reading the record pre-

---

[1] Memo: Mr. Linkins, who argued the case in this court, was not of counsel in the trial below.

cisely what objection was urged against the admissibility of these reports, and we find a statement in the brief of appellee, but as to which the record is silent, that the reports themselves were produced by subpœna duces tecum at appellant's instance. We presume, however, that the objection to the admission of the reports grows out of their violation of the hearsay rule. If the reports, the tenor and purport of which we are able to gather only from some of the statements which appear in the colloquy between the court and counsel, were regular government hospital records made by government officials whose official duty it was to record the facts, we think the point against their admissibility would not be well taken. Wigmore on Evidence, vol. 2, § 1420 et seq. But since, as we have intimated, the case must be reversed on another ground, we do not stop to inquire further as to this point.

The evidence shows that when appellant obtained a discharge from the army, he was a patient in the government hospital at Fort Douglas, Utah. The certificate of the examining surgeon at the time of his discharge contained the following notation: "Final diagnosis, gas, chlorine, chronic arthritis articular of joints; tonsilleptomy, bilateral, all in the line of duty." A month later appellant was examined by Dr. Roberts and found to have pulmonary tuberculosis of both lungs. In 1921 he was examined by another doctor whose findings were: "Pulmonary tuberculosis, chronic, apparently arrested." Just before the trial in 1930 appellant was again examined with the result that he was found to have tuberculosis, chronic, multiple arthritis, and a major form of epilepsy. Appellant himself testified that from the date of his discharge he had endeavored to work at various occupations but on each occasion was unable to do any work because of his physical disability. The government physicians who testified all agreed that appellant was diseased. Among the diseases found were tuberculosis and arthritis. One doctor described him as a moron with the mind of a child of twelve, and other physicians as a person of psychopathic temperament; but there is no record anywhere of any evidence on behalf of the government that he ever worked after he left the Army, though, in the opinion of some of the doctors who examined him while he was being treated from time to time in various hospitals, he was able to.

■ What we said above as to the insufficiency of another part of the record applies with even greater force to the attempted narration of the evidence. So little is found in the condensation of the evidence that it is impossible to gather from it a satisfactory account either of appellant's physical condition or of the circumstances of his inability to work. The preparation of the record as a whole exhibits a degree of carelessness which we feel ought not to go wholly unrebuked. Nothing is of greater importance in the preparation of papers on appeal than an accurate, concise statement of the evidence, oral or documentary, on which the case was tried below. Citations of applicable law in the argument and in the briefs are helpful, but these may be omitted with less danger to a correct determination than absence from the record of the material facts on which the case must turn, and too often, we find, counsel wholly overlook this fundamental principle.

■ At the close of the evidence appellant submitted several prayers to charge.

The first was that ability to perform some work does not indicate in and of itself that the plaintiff was not permanently and totally disabled as contemplated by the law in the case, and the mere fact that he worked for a short period of time should only be given whatever weight the jury think it entitled to in connection with the other testimony in arriving at a verdict as to whether or not such disability was total and permanent and calculated to continue during the probable lifetime of the plaintiff.

The second was to the effect that intermittent, irregular employment by the plaintiff and the receipt of reasonable compensation for it was not of itself conclusive evidence of a lack of total and permanent disability.

The fourth was that the jury be instructed that the term "total and permanent disability" does not mean that there must be proof of absolute incapacity to do any work at all, but rather such impairment of capacity as to render it impossible to follow continuously any substantially gainful occupation.

The learned trial judge rejected these prayers and charged generally, in the course of which he defined the term "total and permanent disability" as follows: "Permanent in the sense that there can be no recovery; total in the sense that it is completely 100 per cent. total disability and that disability permanent, no recovery, and preventing him

from ever again·following continually a substantially gainful occupation."

As we construe this language, and as, we think, the jury had a right to construe it, it meant that the plaintiff could not recover unless his disability was 100 per cent. total, which, we think, is the equivalent of saying that, in order to recover, his condition must be shown to be such as to make any work impossible. This, we think, must be held to be both unreasonable ·and arbitrary and wholly contrary to the definition of the term adopted by most of the courts. The First Circuit Court of Appeals [in Ford v. United States, 44 F.(2d) 754, 755] in·defining "continuously" held that if the claimant (the holder of the policy) is able to follow a gainful occupation only spasmodically, that is to say, with frequent interruptions due to disability, he is entitled to recover under the act. The Ninth Circuit [in United States v. Sligh, 31 F.(2d) 735] held the term "total and permanent" not to require proof of incapacity to do any work at all. The Eighth Circuit [in United States v. Phillips, 44 F.(2d) 689] said that the term does not mean that the policyholder must be unable to do any·work whatever, that he must lie abed, or sit in a chair and be cared for by others. The Fourth Circuit [in Carter v. United States, 49 F.(2d) 221] adopted substantially the same definition. And our own conclusion is that the fact that the claimant works when physically unable to do so, by which we mean in a case in which he thereby endangers his health, or because he is able to work spasmodically or for short periods from time to time, in neither case ought to defeat his right to recover.

This, we think, is the reasonable meaning of the provisions of the policy and the regulations of the department under section 13 of the War Risk Insurance Act (40 Stat. 399), as amended (40 Stat. 555), and World War Veterans' Act, § 5, 43 Stat. 608 (38 USCA § 426), and in this view, we think, the failure to give the instructions asked by appellant in prayers 2 and 4, as outlined by us above, was not cured by anything contained in the general charge, and that the language used by the court, which we have quoted, was misleading and probably seriously affected the result.

In the circumstances, we are constrained to reverse the judgment of the court below and remand the case for a new trial to be had not inconsistent with this opinion. ·

Reversed.