## UNITED STATES v. POLLEY.
### No. 4997.

Circuit Court of Appeals, Seventh Circuit.

Nov. 2, 1933.

T. B. Orbison, of Indianapolis, Ind., for the United States.

Frank C. Wade, of Terre Haute, Ind., for appellee.

Before EVANS, SPARKS, and FITZHENRY, Circuit Judges.

FITZHENRY, Circuit Judge.

This is a war risk insurance case in which trial by jury was waived, the cause heard by the trial court, and judgment entered in favor of appellee.

Appellee entered the service July 26, 1918, and was discharged February 7, 1919. The complaint consists of two paragraphs, the first, alleging total permanent disability from date of discharge, and, second, alleging that premiums were paid on insurance until the date of discharge; that no premiums were paid thereafter, but, at all times from the date of discharge until December 12, 1921, appellant owed insured compensation in excess of the premiums as they became due, and because thereof, by virtue of section 305 of the war insurance act, Act of June 7, 1924, as amended (38 USCA § 516), the insurance involved did not lapse for nonpayment of the premiums until after the 12th day of December, 1921, within which time appellee was totally and permanently disabled. Issue was joined on both paragraphs. The court made a finding and rendered judgment for the appellee on the first paragraph of the complaint, finding that appellee was totally and permanently disabled on the 7th day of February, 1919, the date of discharge, and judgment was rendered accordingly, from which this appeal is prosecuted. The only question involved in this appeal is whether there was any substantial evidence to sustain the finding of the court.

The proof shows an award of compensation of $8 per month had been made to appellee from date of discharge, which award was thereafter paid, except for the three months after discharge, and this sum has never been paid; that there was sufficient compensation due appellee which had not been paid to prevent his insurance from lapsing for nonpayment of premiums until after December 12, 1921.

Appellee had been coughing and spitting up considerably and was in poor health, according to his testimony, prior to his discharge, after which he immediately went home and to bed. His ailment was described as the "flu." He was under the care of the family physician, Dr. Bermilya, for a while and afterwards, Dr. Harris, until the time of the latter's death, some time in 1929. Dr. Vermilya was not called as a witness for some reason unexplained in the record. However, it does show that appellee was examined by Dr. Whetsell, February 18, 1919. The doctor took the customary military history, made a general physical examination, and found,

"Chronic bronchitis, dental caries or decayed teeth and flat feet, both feet; tuberculosis suspect"; that the same doctor made a further examination on May 25, 1922, at the insured's request and sent a statement to the Veterans' Bureau. On this second examination, which was superficial, he diagnosed the case as chronic bronchitis, tuberculosis suspect, and he testified that there were rales at the time of his last examination. Afterwards, he added to his report: "Later examination disclosed pulmonary tuberculosis active." He said he got this latter fact from the patient.

In 1921, at the instance of Dr. Rogers, a Veterans' Bureau doctor, the insured was sent to Dr. John Daily, of Terre Haute, for examination, which was made September 7, 1921. Dr. Daily's examination disclosed: "Chronic, active tuberculosis, unfavorable for improvement." The findings of Dr. Daily were corroborated by Dr. Pierce, who made some X-ray exposures of the patient. From 1921 on the soldier was examined by other doctors many times. He was at Edward Hines, Jr., Hospital at Maywood, Ill., Veterans' Hospital at Outwood, Ky., and Veterans' Hospital at Dawson Springs, Ky. So there could be no question as to the affliction of the soldier from and after the examination by Dr. Daily on September 7, 1921. His physician at the time of the trial testified that at the time of his first examination in February, 1929, the patient's tuberculosis was active and he was totally disabled; that he would certainly not expect the man to recover so he could work.

The language of this court in United States v. Bass, 64 F.(2d) 467, 469, is particularly applicable to this case, except in that case the trial was before a jury, here it was before the court: "Unquestionably the veteran was under some disability, the extent, permanency, and effect of which was a proper question for the jury upon the evidence submitted. The evidence of disease appeared from the report of the bureau itself, as well as from the testimony of appellee. The effect of the disease appeared in the evidence of plaintiff's inability to work and his frequent hospitalizations. The period of more than ten years between the time of his discharge and the time of trial in 1931, during which there was evidence of his illness, inability to work, and hospitalizations, gave some indication of the permanency of his disability. The testimony indicates that he tried to work. Under the decisions of this court in United States v. Tyrakowski, 50 F.(2d) 766, 768, 770, Malavski v. United States, 43 F.(2d) 974, and Vance v. United States, 43 F.(2d)

975, there was sufficient evidence to warrant submitting the question of total and permanent disability."

In this case it is urged that because appellee worked from March until October in the furniture factory as a joint gluer, therefore he was not totally and permanently disabled. His fellow servant in the factory, Charley Kiser, testified: "Plaintiff and I worked on a glue jointer and plaintiff was not able, or did not act like he was able, to do his part of the work. He did not do his part. We both worked on the same machine and I helped him along with his work because he wasn't able. I could not tell whether he was discharged or whether he quit of his own accord." The work record of appellee demonstrates he was at least willing to try to work. All of the numerous physical examinations made of this veteran demonstrate beyond question that he was suffering from a pronounced disability and his efforts to earn a living demonstrate his earnestness of purpose.

We are of the opinion that there was substantial credible evidence submitted to the trial court to sustain appellee's claim, and the judgment must be, and is, affirmed.