# SMITH v. UNITED STATES.

## No. 1173.

District Court, N. D. West Virginia.

Nov. 22, 1934.

See, also, 2 F. Supp. 319.

Russell, Hiteshew, Adams & Hill, of Parkersburg, W. Va., for plaintiff.

Howard L. Robinson, of Clarksburg, W. Va., and W. C. Howard, of Wheeling, W. Va., for defendant.

BAKER, District Judge.

This is a suit to recover on a war risk insurance policy, instituted January 14, 1932.

It is stipulated by the parties that plaintiff, Willard Smith, enlisted in the military

service of the United States on June 28, 1918; that he took out a $10,000 war risk insurance policy on July 1, 1918; that he was honorably discharged July 10, 1919; that premiums were paid upon his insurance to and including the month of July, 1919; that the policy lapsed for the nonpayment of premiums on August 31, 1919, unless it had previously matured by reason of plaintiff's total and permanent disability prior to said last mentioned date.

It is further admitted that plaintiff, Willard Smith, reinstated and converted $3,000 of said $10,000 policy into an endowment policy on April 1, 1923, and that benefits have been paid him since the month of February, 1930, upon said $3,000 policy. Therefore, there is only $7,000 in dispute in this case.

It is proven beyond a doubt that plaintiff while in active service on November 2, 1918, was seriously wounded in the Argonne Forest of France when he ran into a nest of machine guns, and, out of approximately two hundred men, only sixteen survived. In this encounter plaintiff lost his right leg, received a bullet wound directly under the heart, which left a scar from five to six inches across his body about two inches wide in the center, and approximately three-fourths of an inch deep. He also received a bullet wound in the left thigh, which practically severed the muscles and tendons of that leg. He received a bullet wound in the upper portion of his left foot, resulting in a fracture and crushing of the bones of the foot, which left a bad scar from the top of the instep around the inside of the foot; that while in one of the hospitals his left knee became infected, making it necessary to drill into the bones of the knee on either side, leaving a bad scar at the point where the operation occurred.

These various wounds are shown in a way by Plaintiff's Exhibits 1 to 6, inclusive, but, to fully appreciate the extent and seriousness of these wounds, one must see the plaintiff as observed by this court during the trial. Photographs cannot convey to the human mind the extent of these wounds.

From the time of his injury until his discharge from Walter Reed Hospital on July 10, 1919, he remained in government hospitals. Immediately after his discharge he was taken to his father's home in Volcano, W. Va., where he remained until September, 1921. During that period of more than three years, he was unable to do work of any kind or character. His left leg was so badly paralyzed, that the only way he could use it was by tying a strap to the toe of his left foot and raising the leg with the strap in his effort to move about.

According to plaintiff's testimony, in 1921 he was given the impression that it was necessary for him to undertake vocational training or have his compensation greatly reduced. Hence, he undertook vocational training, to wit, dental laboratory work, and continued in this vocational training until April, 1924. After completing his vocational training, for some time he attempted to do laboratory work. During all this time he continued to suffer, and his suffering grew worse as a result of the work he was attempting. Being advised to give up his dental laboratory work, plaintiff went to a porcelain plant in Parkersburg where he attempted to work from February until August, 1929.

Dr. Davis testified that plaintiff's attempt to work created nervous exhaustion, and his condition gradually grew worse. Hence, he had to stop him from working altogether, further stating, if plaintiff had persisted in going ahead with the work, the final result would have been complete nervous collapse.

Dr. Goff, one of the most eminent surgeons in West Virginia, examined plaintiff on January 6, 1932, and gives as his opinion that at that time any physical exercise would have been deleterious to his health or at any previous time after his being wounded.

I am not unmindful of the work record of the plaintiff beginning three years after his discharge. The government contends that this work record is so overwhelming that it should defeat any recovery by the plaintiff.

The term "total and permanent" disability does not mean that the party must not be able to do anything whatsoever—must either lie abed or sit in a chair and be cared for by others. It is enough if there is such impairment of capacity as to render it impossible for the disabled person to follow continuously any gainful occupation without further injury to his health.

Some persons totally incapacitated for work, by virtue of strong will power, may continue to work until they drop from exhaustion. The mere fact that plaintiff worked for substantial periods when he claims he was permanently and totally disabled is not conclusive against him. The question is not whether he worked, but whether he was able to work, i. e., to follow continuously some substantial gainful occupation without material injury to his health. The fact that he

worked when physically unable to do so should not defeat his right to recovery. United States v. Phillips (C. C. A.) 44 F.(2d) 689; Carter v. United States (C. C. A.) 49 F.(2d) 221.

██ My conclusion is that the plaintiff has established the two things that are necessary before he can recover: First, that before his policy lapsed he was totally disabled, i. e., his disability was of such a character that he was incapable of pursuing, with reasonable regularity, any substantial gainful occupation; second, that his disability was of a permanent character, i. e., that it was based upon conditions which rendered it reasonably certain at the time that it would continue throughout the life of the insured.

Therefore judgment will be entered for the plaintiff.