**UNITED STATES v. DUNCAN.**

**SAME v. MARTIN.**

**Nos. 5005 and 4931.**

Circuit Court of Appeals, Seventh Circuit.

Oct. 25, 1933.

Val Nolan, U. S. Atty., and Telford B. Orbison, Asst. U. S. Atty., both of Indianapolis, Ind. (Davis G. Arnold and C. L. Dawson, Attys., Veterans' Administration, both of Washington, D. C., of counsel), for the United States.

Clarence E. Benadum, of Muncie, Ind., for appellees.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge (after stating the facts as above).

The only question herein involved is whether there is substantial evidence in the record to support the court's findings to the effect that each appellee during the life of his policy was affected with an impairment of mind or body which rendered it impossible for him to follow continuously any substantially gainful occupation, and that such impairment was founded upon conditions which rendered it reasonably certain that the impairment would continue throughout the appellee's life. 43 Stat. 608, § 5, as amended by Act July 3, 1930, § 1, 46 Stat. 991 (38 USCA § 426), and Director's Regulation 11.

In this discussion we shall first consider the case of John C. Duncan. He enlisted in the military service of the United States on April 30, 1917, and was discharged therefrom on April 16, 1919, on account of physical disability. His policy was in force up to and including May 31, 1919. The complaint alleges that while the insurance was in force, appellee became totally and permanently disabled as a result of amœbic dysentery, stomach trouble from trichiniasis, mucous colitis, pulmonary tuberculosis, neurasthenia, extreme nervous disability, and general disability.

The evidence discloses that while in the service appellee was affected with bowel and stomach trouble for which he was treated many times in the infirmary and hospitals. It was on this account that he was sent home from overseas, and at the time of his discharge he was suffering from dysentery and was in a very weak and nervous condition and walked with considerable difficulty and was compelled to use a cane. Within a week and a half after returning to his home he was under the care of a doctor who has since died, and he remained under his care until 1920. From July 23, 1921, to the date of trial on December 27, 1932, he was admitted

under appellant's order into seven different hospitals a total of fourteen times for examination, observation, and treatment. He has spent one-third to one-half of the time since his discharge from the army in hospitals in many different parts of the United States. He was examined, and in some instances treated, by forty-four government physicians and surgeons, some of whom examined and treated him many times, and he submitted to an operation for hemorrhoids. From the reports of these examinations and treatments the trial court was amply warranted in believing that appellee was affected with all the infirmities mentioned in the complaint, and many more, although of course that evidence does not show that he was so affected during the life of the policy.

Appellee's physician who examined and treated him in February, 1922, had known him during most of his life, and he stated that his diagnosis showed angina pectoris, pyloric ulcer, and chronic diarrhea. He thought appellee was permanently and totally disabled when he treated him; that he might be able to do a little work at times, but not continuously; that he had seen him a few times when he thought he was reasonably well except for his myocarditis, that is, he was able to be around and do some work but not continuously, and that his disability was reasonably likely to continue; that he might work for a few hours, or for a day or a week, but he believed that he could not follow a substantially gainful occupation at any time continuously. Another physician on behalf of appellee testified that he examined him in 1919, and found ulcer of the stomach, and advised hospitalization, and he afterwards heard that he was taken to the hospital at Cleveland, Ohio; that he had seen him at irregular intervals during seven or eight years immediately preceding the trial, and his stomach trouble remained about the same, and witness thought it was reasonably likely to continue throughout life; and that he was permanently and totally disabled from following a substantially gainful occupation. This witness was confronted with his own affidavit made in September, 1930, in which he stated that he had treated appellee from time to time since February, 1928, and he was then asked when he first examined him, to which he replied that he first examined and treated him when he advised him to go to the hospital, and he was not sure when that was, but thought it was earlier than 1928. The record discloses that he was first taken to the hospital in Cleveland on July 23, 1921. He was there several times, and his last admission was February 23, 1927, and he was not discharged from there until March 12, 1929.

The evidence discloses that appellee attempted to work at various times after his discharge from the service, but it certainly cannot be contended that he worked with any marked degree of continuity, although he was at all times willing and anxious to do so. It is true that a large part of the evidence aside from the medical testimony and the hospital record is furnished by appellee and his family and friends, but this fact would not preclude the trial court from believing them if it deemed their testimony worthy of credit. A perusal of their testimony together with all the other evidence convinces us that there is substantial evidence in support of the court's findings that on the date of his discharge he was permanently and totally disabled. We are in accord with appellant's contention that liability on the policy must be for disability existing within the life of the policy, and not for disability arising after its expiration. It is true that appellant's medical testimony and the reports from its medical officers covering a period beginning July 23, 1921, show a large number of disabilities from which appellee was suffering, and it is not unlikely that some or perhaps many of them arose after the expiration of the policy. However, even if this be conceded, the fact remains that according to substantial testimony appellee was a very sick man from the date of his discharge and has been unable to work at all for any appreciable length of time. Appellee's claims as to the character of his disabilities at the time of his discharge are sufficiently broad to cover about all the diagnoses that were made. From the reports of those many diagnoses it is hardly probable that any one physician or surgeon who has examined him would say that he is now, or has been, afflicted with all the diseases which the reports show, and in view of this diversity of opinion appellee ought not to be expected to describe his disability with exactness.

The judgment rendered in behalf of appellee John C. Duncan is therefore affirmed.

With reference to appellee Ebben Martin the record discloses that he enlisted in the military service of the United States on January 10, 1918, when he was eighteen years of age. He was honorably discharged on March 2, 1918, by reason of surgeon's certificate of disability because of chronic pulmonary tuberculosis. This certificate stated that his physical condition at that time was poor and that his character was excellent. His policy

was in full force and effect to and including May 31, 1918. For five years prior to his enlistment he had worked steadily for a dealer in monuments who testified that he was a good worker. After his discharge he was re-employed by the same dealer at a salary of $18 a week, and his work was well done when he was able to work, but he was coughing and spitting, and he had to lay off frequently, complaining of being sick. He tried to work at this job from April 12 to August 24, 1918, and from April 12 to May 24, 1919, but on account of his health he was unable to and did not work a full week continuously during any of that time. Following his dismissal from this employment he attempted to work in a furniture factory in 1919 over a period of about six months, not deducting the time he lost on account of sickness, which amounted to two or three months. During this time he was coughing and spitting and short of breath, and frequently requested to be excused from work in order to go to his doctor for treatment on account of his lungs. The work was not heavy and he was given the easiest job in the shop. His foreman in this employment said that he was a hard worker. From December, 1921, to May, 1923, the Government attempted to give appellee vocational training in shoe repairing shops at Evansville, and although the work was light he was unable to work continuously and could not do the work. In 1928, on several occasions he attempted to work for the Caden Stone Company, rubbing stone. His employer there stated that he was a willing worker, a good workman, and neat in his work, but was not physically able to work regularly, and consequently he was discharged. All the witnesses who knew appellee and observed him in his attempts to work testified that he was industrious and willing to work but lacked the physical capacity to do so.

Appellee tried to obtain employment at a number of places, but he has not been able to hold a job since his discharge. He was very illiterate and was not mentally qualified to do other than common labor. He has not been able to sleep well at nights since his discharge, and has been and was at the time of the hearing suffering from asthma, shortness of breath, night sweats, and abnormal conditions in his head. He was married in 1918 to a very young girl, and they were divorced after about eight years. However, she confirmed his inability to work continuously during their married life.

Dr. Johnson, a former examiner of the Veterans' Bureau, examined appellee for the Bureau in September, 1921, and found him suffering from chronic pulmonary tuberculosis affecting both lungs. This examination was confined to the chest, and witness did not know whether at that time appellee was suffering from other disability. He examined him again in October, 1931, and found chronic pulmonary tuberculosis which was apparently inactive. He also found bronchial asthma, emphysema, and some sinus affection. From both examinations he was of the opinion that at both times appellee had been and was then permanently and totally disabled from engaging in any substantially gainful occupation, and that the disability at the time of the hearing was from emphysema and chronic asthma.

Dr. Barnes had known appellee since 1920. He examined him in June, 1924, and in September, 1932, and had observed him for ten years, and he thought that during all of that time appellee had been, and was then, totally and permanently disabled from engaging in any substantially gainful occupation. His testimony was not at all inconsistent with that of Dr. Johnson. He further stated, however, that appellee's chest was of a barrel shape, due to the fact that his air spaces were enlarged and the ribs were drawn up so as to widen the chest from front to back, which is a condition known as emphysema, and which cuts down the expansion of the chest; that this condition was present in 1924 and in a more marked degree in 1932, and indicated a chronic tuberculosis. He did not then think that his tuberculosis was active, but he could not say how long it had been arrested. He did not think there was anything unnatural in the fact that appellee had emphysema and chronic bronchitis, taking into consideration that he had inactive tuberculosis.

Dr. Weir was assistant surgeon in charge of the United States Marine Hospital in 1920 and 1921, and was employed as a physician by the United States Public Health Service in 1924. He examined appellee on January 8, 1920, November 1, 1920, and February 1, 1921, and at each time found chronic pulmonary tuberculosis, probably inactive on the first examination although not so stated in his report, and active on the last two. He stated that tuberculosis might be inactive at a given time and become active the following week. His prognosis at the time of the first two examinations was "favorable with proper treatment." At the last examination his prognosis was "not favorable." He would not say that appellee was permanently and totally disabled in 1921. He said chronic bronchitis was frequently found in cases where there was either active or inactive tu-

berculosis; but he would not say that where there was tuberculosis there was necessarily emphysema. The latter, he said, might be caused by bad tonsils or bad teeth. Assuming inactive tuberculosis and bad tonsils and bad teeth, he believed he would attribute the emphysema to something other than the tuberculosis.

Dr. Rose certified that he had been the medical attendant of appellee from the date of his discharge to January 19, 1920, and that during that time appellee was suffering from tuberculosis which was inactive in the left lung, but active in the right upper lobe, and that his condition was aggravated by his having to do hard manual labor to support himself and wife.

Dr. Cleveland made an X-ray examination of appellee in 1923, and thought that at that time he could steadily follow a substantial occupation without impairment to his health, and he based his opinion on the report which he made at that time.

From the evidence referred to we have no doubt that there was substantial evidence to support the court's finding and judgment. It is contended by appellant, however, that inasmuch as appellee's tuberculosis was inactive, he was therefore able to engage in a gainful occupation, and it insists that this proposition is supported by the weight of authority. The authorities cited by appellant do not support this contention. They merely hold that there are many cases of inactive tuberculosis where the patient is able to engage continuously in a gainful occupation.

It is further contended by appellant that appellee's incapacity now is due to emphysema and chronic asthma, and not to tuberculosis. Regardless of our opinion as to the weight of the evidence on this question, we are quite certain that there is substantial evidence to support the contrary position. From the testimony of Dr. Weir we think one could very properly infer that emphysema is a symptom rather than a disease, and might be caused by tuberculosis, although the doctor believed he would attribute it to the patient's tonsils and teeth. Whether asthma may or may not be caused or superinduced by tuberculosis, the evidence is not clear, but it does show that it and also emphysema indicate tuberculosis and are frequently found with it. But aside from emphysema and asthma, the evidence shows that appellee had been affected with at least inactive chronic tuberculosis since the date of his discharge, and we think there is substantial evidence to support the finding that this is the primary cause of his disability.

Appellant relies upon Nalbantian v. United States (C. C. A.) 54 F.(2d) 63, but the work record in that case is far different from the instant case. Here appellee tried to secure work and to hold his jobs, and for this he is to be commended; but the fact remains that he was unable to hold any job for any appreciable length of time. All of his employers commended him for his efforts and his industry, and without exception they said he was not able to work.

The judgment in favor of appellee Ebben Martin is affirmed.