## UNITED STATES v. BELLER.
### No. 5135.

Circuit Court of Appeals, Seventh Circuit.
April 23, 1934.

Val Nolan, U. S. Atty., and B. Howard Caughran, Asst. U. S. Atty., both of Indianapolis, Ind. (Wilbur C. Pickett, Sp. Asst. to Atty. Gen., of counsel), for the United States.

Jackson & Rees, of Indianapolis, Ind., for appellee.

Before EVANS, SPARKS, and FITZHENRY, Circuit Judges.

FITZHENRY, Circuit Judge.

Appellee sued to recover upon a war risk insurance contract. Trial by jury was waiv-

ed, the cause heard by the court, the court found the issues for the plaintiff, and entered a judgment, which appellant seeks to reverse.

Appellee enlisted November 22, 1917, and was discharged January 27, 1919; he applied for and was granted war risk insurance, which was paid for by deductions from his military pay. The insurance was in force until March 3, 1919, including the usual thirty-day grace period. Appellee sought to recover the total disability benefits on the contract, charging that his total and permanent disability was caused by shell shock, or neurosis, suffered during a bombing raid, which resulted in nervous and mental disorders and intermittent nervous attacks. Appellant's answer was a general denial.

■ The court found the soldier was totally and permanently disabled within the meaning of the law, while the policy was in force, and ever since that time. Appellant contends there was no substantial evidence to sustain the finding of the trial court.

A soldier companion of appellee in France testified that appellee was injured in an air raid; was treated by company doctors, and never after that was a competent soldier, but was nervous and ready to run; and since the war he has been peculiar and in an abnormal nervous condition. The soldier's brother and two sisters testified as to his condition immediately after his return from the service. All testified that he was highly nervous, easily excited, and had frequent outbreaks of fear in which he would drop everything and run; he would have seizures and attacks and become partially unconscious. He was given vocational training by the government; was not a steady worker; would go all to pieces at any sudden disturbance; get weak and have to lie down or go home. He went wild when an airplane passed over the shop, ran away, and could not be found for two or three days.

The doctor in charge of the State Hospital at Indianapolis, who had been a government doctor, testified that under his supervision in the Methodist Hospital, during the months of November and December, 1920, and January, 1921, appellee had a nervous disability, was irrational and threatened to kill him, and had a number of nervous attacks; appellee was then suffering from hysteria which might be classed as a form of insanity; he was not competent; was totally disabled at the time he was under the treatment of witness.

His personal physician saw him within two weeks after he was discharged, and described his condition as extremely nervous,

unable to sleep, loss of appetite, with many fears, and that he stuttered and stammered. He was in a condition of nervous excitability. The physician made a complete examination, found a rapid heart, a varied pulse rate, and a condition which interfered with a normal course of life. The soldier was afraid to go down town because he said he was afraid the buildings would fall upon him. Witness treated appellee on numerous occasions during his nervous seizures and attacks. At the time of the trial this witness testified he could see no improvement in appellee's condition. In his treatment of the soldier for a year after his discharge, he could see no improvement, and referred the case to the Veterans' Bureau. He was sent to the Methodist Hospital and afterwards to the Marion Government Sanatorium. The soldier was incapable of holding any job during all the time witness had treated him. His memory was poor and his judgment not good. Some of his attacks lasted for days and others not so long. His pulse rate during attacks was 150 to 160. Any physical effort on his part resulted in these attacks, as would any sudden shock or fright.

His symptoms, as described by his personal physician, personal friends, and the immediate members of his family, were sustained by the doctors who testified. Dr. L. H. Gilman, a government doctor and a specialist in mental diseases, testified he had examined appellee in 1926, 1927, and in May, 1933, with a diagnosis each time of pyschoneurosis, traumatic neurosis, severe; neurocirculatory asthenia, poor exercise tolerance; stammering; no change in plaintiff's condition during the seven-year period; an excitable nervous condition, with pulse rate under mild exercise of 156; that plaintiff is totally disabled, and his condition was reasonably certain to continue throughout his life; and that he could not work continuously at any substantially gainful occupation. Work of any nature would impair his health and aggravate his nervous condition.

In addition, there were a number of exhibits, reports of examinations of other government doctors under whose observation appellee had been at different times, and these official reports tend to sustain the testimony of Dr. Gilman and to explain and corroborate the testimony of the lay witnesses.

In the course of the trial, it developed that, since appellee had been in the service, he had developed the habit of using intoxicating liquors, the cause of which might well have been the result of his mental weakness and incompetency.

As this court said in Hanagan v. United States, 57 F.(2d) 860, 861: ."It is too plain for discussion that, if the record discloses substantial evidence to support the finding and judgment of the trial court, it cannot be disturbed on appeal." United States v. Duncan (C. C. A.) 67 F.(2d) 356; United States v. Tyrakowski (C. C. A.) 50 F.(2d) 766.

We feel there was substantial testimony tending to support the findings of the District Court, and, in the light of that fact, the judgment must be, and is, affirmed.