## LYNCH v. DARNELL et al. (two cases).

(Circuit Court of Appeals, Eighth Circuit. May 19, 1920.)

Nos. 5349, 5350.

1. **Trial ☞343—General verdict involves affirmative finding on material issues submitted.**

   Where, in an action for breach of contract, issue was submitted as to whether defendant held out one as his agent, general verdict for plaintiff involved an affirmative finding on that issue.

2. **Appeal and error ☞241—Motion for directed verdict generally raised point as to sufficiency of evidence on material issue.**

   In action for breach of contract, involving agent's authority to make contract sued on, defendant's motion for directed verdict at close of trial raised on writ of error the point that there was not sufficient evidence of agency, though that point was not particularly specified.

3. **Principal and agent ☞194(2)—Instructions not prejudicial to defendant.**

   Instructions as to the authority of an agent to bind defendant by the contract sued on *held* as favorable to defendant as the evidence warranted.

4. **Sales ☞175—Repudiation absolves other party from further performance.**

   In an action for breach of a contract for the purchase by defendant of horses for the French army, the horses to be passed by French inspectors before shipment to New York for delivery, where the action was based on defendant's repudiation of the contract before completion of delivery, failure to allege and prove inspection and approval of horses thereafter *held* not a bar to recovery.

5. **Sales ☞382—Evidence admissible in action for breach of contract.**

   In an action for breach by defendant, by repudiation, of a contract for purchase of horses to be delivered in New York, evidence that at the time of breach horses of the kind had little market value in New York, of their market value at places of shipment, and cost of transportation, *held* admissible on the question of damages.

In Error to the District Court of the United States for the District of Minnesota; Wilbur F. Booth, Judge.

Actions at law by D. Darnell and others against Fred B. Lynch. Judgments for plaintiffs, and defendant brings error. Affirmed.

E. T. Young, of St. Paul, Minn. (O'Brien, Young, Stone & Horn, of St. Paul, Minn., on the brief), for plaintiff in error.

J. E. McCadden, of Memphis, Tenn., and Pierce Butler, of St. Paul, Minn. (Sivley, Evans & McCadden, of Memphis, Tenn., and Butler, Mitchell & Doherty, of St. Paul, Minn., on the brief), for defendants in error.

Before HOOK and STONE, Circuit Judges, and AMIDON, District Judge.

HOOK, Circuit Judge. These were actions by Darnell and others against Lynch for breach of two contracts of sale by which the latter was to accept and pay for certain horses for the use of France in the recent war. The cases were tried together, and resulted in verdicts and judgments for the plaintiffs. The defendant prosecuted writs of error upon a single record.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] The first contract was dated October 11, 1915; the second, October 15, 1915, was supplemental to the other, and was in the form of an option to Darnell and his partners to be filled upon the completion of the first. Each called for the delivery at the Atlantic seaboard of 2,500 horses, subject to French inspection at assembling points in the West and at a price of $168 per head. The plaintiffs delivered and were paid for 1,472 horses under the first contract. In November, 1915, the defendant denied all contract relations with the plaintiffs and refused to accept any more horses. Defendant's name was signed to both contracts by H. B. Cantey as his agent. Cantey was the president of the Allied Live Stock Corporation, a New York corporation, organized to do a live stock business during the war. The defendant contended that Cantey had no power to execute the contracts in his name, was not his agent, and was without authority to bind him to the purchase of horses from the plaintiffs. Upon this the court charged the jury that there was not sufficient evidence of express or direct authority or of subsequent ratification or adoption. However, the court submitted the question whether defendant had so held Cantey out as his agent that in the circumstances a reasonably prudent man would have been justified in believing he possessed that capacity. As to this the verdicts for plaintiffs necessarily involved an affirmative finding by the jury.

[2, 3] The defendant questions here the sufficiency of the evidence of Cantey's authority. His motion for a directed verdict at the close of the trial raised the point, though it was not particularly specified. We do not think the defendant has any ground for complaint on this phase of the case. On the contrary, the court might properly have gone further in its instructions. There was substantial evidence that, instead of contracting with the Allied Corporation as a principal, as he claims, the defendant employed it as an intermediary or agent to deal for him with plaintiffs upon an agreed commission of $2 per head of horses delivered, and that in fact defendant paid the commission for that service. There was testimony that defendant first opened the subject with the treasurer of the Allied Corporation, gave him the name and western address of Darnell, one of the plaintiffs, said he would pay Darnell $168 per head, also $2 per head to the Allied Corporation, for handling the business, and that he wanted up to 10,000 head. This was the beginning of the course of events which quickly followed. The treasurer wired Cantey, the president of his company, who was then in Nebraska, to get in touch with Darnell, then in Montana. Darnell wired defendant of the coming of Cantey, and that he presumed Cantey was defendant's representative. Defendant replied by wire: "Cantey authorized to represent me."

The details of the making of the two contracts need not be recited. They were within the original commitment of defendant. Other communications passed between defendant and Darnell, quite consistent with a direct relation between them, but more difficult to explain, if, as contended, defendant contracted for the horses with the Allied Corporation. Plaintiffs made part of their shipments to the Allied

Corporation and drew drafts accordingly, but it was at Cantey's direction, and as might naturally be assumed upon defendant's authority. Nothing occurred before defendant's denial of the contracts reasonably calculated to put plaintiffs upon their guard. What they did before defendant's breach was consistent throughout with their belief that their contracts were with the defendant, and that the Allied Corporation and Cantey were his representatives. The settlement in January, 1916, with Love, one of the plaintiffs in one of the cases, was for horses which had been delivered and accepted under the first contract. It cannot fairly be said to have covered also the damages for the breach, nor regarded as conclusive that plaintiffs' contracts were not with the defendant.

[4] It is also contended that inspection and approval of the horses by the French inspectors was a condition precedent to plaintiffs' right to deliver them, and that, as the pleadings did not allege prevention or waiver of the condition, no cause of action was stated. The point on the pleadings was not made at the trial. If there had been in this particular a fatal defect in the evidence, whether also in the pleadings or not, the objection would arise on a motion to direct a verdict; but the complaints in these cases contained averments that the failure to complete the contracts was due to defendant's repudiation of them, there was evidence at the trial to the same effect, and there was also evidence that defendant controlled the location of the inspectors and caused them to depart. The contention is without merit.

[5] Finally it is said that on the question of plaintiffs' damages the court erred in admitting evidence that, at and shortly after the breach of the contracts, New York, to which plaintiffs had been directed to make shipments, and vicinity, was glutted with horses; that the kind called for by the contracts had little or no market value at New York; and what the market value was at points further west, where those conditions did not exist. The evidence upon these matters was received in connection with evidence of the costs and expenses of transportation from those points to New York, and all made the basis of instructions by the court on the measure of damages. The instructions were correct, and no exceptions were taken to them. The evidence complained of was admissible.

The judgments are affirmed.