## MANSFIELD HARDWOOD LUMBER CO. v. HORTON.

Circuit Court of Appeals, Eighth Circuit.
April 24, 1929.

No. 8172.

T. J. Gaughan, J. T. Sifford, J. E. Gaughan, and E. E. Godwin, all of Camden, Ark., for appellant.

Thomas C. McRae, William V. Tompkins, Duncan L. McRae, and Charles H. Tompkins, all of Prescott, Ark., for appellee.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and MUNGER, District Judge.

BOOTH, Circuit Judge. This is an action brought by appellee against appellant to recover damages for personal injuries alleged to have been sustained by reason of negligence on the part of appellant. Jurisdiction is based upon diversity of citizenship and requisite amount involved. At the close of the testimony for plaintiff, defendant moved for a directed verdict. The motion was denied. Defendant introduced no evidence. The case was submitted to the jury, who returned a verdict for plaintiff. Defendant has appealed from the judgment.

The admissions in the pleadings and the undisputed evidence disclose the following facts: Plaintiff was employed by defendant as a helper in and around its sawmill plant at Reader, Ark. His duties were to clean up sawdust, pieces of timber, and other trash, and to help the other men generally if any one needed assistance. He had been so engaged for about two months when he received the injuries of which he complains. The sawmill building contained two stories. The saws, edgers, cutoffs, and green chains were on the second story; the line shaft, belts, and pulleys were on the ground floor. The machinery was operated by the main line shaft, which was located about 4 feet above the ground floor, and which extended practically through the building. The lumber when sawed from the logs was passed along through the gangsaws, edgers, cutoff saws, and finally fell at the end of the building upon the green chains or conveyors. The belt which operated the green chains passed over a pulley 12 inches in diameter located on the main line shaft, and then passed to and over a large wheel about 3 feet in diameter located about 25 feet distant. The belt when stretched out single was about 57 feet long. It was old and worn, and was made up of three pieces, one 7 inches wide, one 7½ inches wide, and one 8 inches wide. The edges were frayed and had strings hanging down. There was a coupling in the line shaft at a distance of 7½ inches from the edge of the pulley. On the outside of the building, and on a level with the second floor, was the "hog," a machine used to grind up slabs and refuse timber into smaller particles.

On the day of the accident Walter Steele, one of the employés, was feeding the "hog." Observing that no slabs were coming to his machine, he stooped and looked under the mill where the line shaft and belts were, and he saw a belt off its pulley. He at first thought it was the belt which operated the machinery to bring timbers to the "hog." On going down to the ground floor, however, he found that it was the belt which operated the green chains, and which has been described above. He saw that one end of the belt was idling on the line shaft and the other was on the ground, where it had slipped off the large wheel. He called plaintiff, who was nearby, to come and help him put the belt back on the pulley and the wheel. Plaintiff came, and they both went under the main line shaft, Steele going ahead. Steele told plaintiff to wait a minute until he looked to see whether any one was working on the green chains. He walked four or five steps to a point where he could look up through an opening in the floor and see the green chains. While he was looking he heard a noise behind him, and, turning around, saw plaintiff on the ground and the end of the belt striking him on the head. He pulled plaintiff away and found that he was unconscious and severely injured.

The items of negligence charged in the complaint were: (1) Maintaining the pulley and the coupling on the main line shaft at a distance from each other of only 7½ inches; (2) using on the pulley a belt which was old, which had been spliced with two pieces wider than the original belt, and which had frayed edges, and strings hanging from its edges; (3) failure to warn plaintiff of the dangers incident to the operation of the shaft and the belt in their existing condition.

The specifications of error are three in number: (1) Failure of the court to direct a verdict for defendant at the close of plaintiff's case; (2) admission of incompetent testimony; (3) refusal to give certain instructions requested by defendant.

■ The first specification of error is based upon what took place at the close of plaintiff's case. The bill of exceptions discloses the following: "The defendant moved the court to direct a verdict in its favor, which motion was by the court denied and the defendant saved its exceptions. Thereupon, the defendant offered no evidence."

Under the first specification of error appellant has argued the question whether there was any substantial evidence to support a verdict for plaintiff.

We are constrained to hold that the motion was not sufficient to raise the question. For many years this court has laid down the rule that the question whether there was any substantial evidence to support a judgment for the opposite party can be raised, so as to be reviewable, only by a motion, request for a ruling, request for a declaration of law, or other equivalent action, at the close of the evidence; that such motion, request, or oth-

er equivalent action must be based upon a specific ground or grounds stated in apt words and brought sharply to the attention of the court; that a ruling must be obtained and an exception preserved. A general motion stating no grounds is not sufficient. The same rule applies to cases tried with a jury and to cases tried to the court where the statutory requisites waiving a jury have been fulfilled. Adkins v. W. & J. Sloane (C. C. A.) 61 F. 791; National Bank of Commerce v. First Nat. Bank (C. C. A.) 61 F. 809; Citizens' Bank v. Farwell (C. C. A.) 63 F. 117; Barnard v. Randle (C. C. A.) 110 F. 906; United States Fidelity & Guaranty Co. v. Board of Com'rs (C. C. A.) 145 F. 144; Keeley v. Ophir Hill Consol. Min. Co. (C. C. A.) 169 F. 598; Seep v. Ferris-Haggarty Copper Mining Co. (C. C. A.) 201 F. 893; Wear v. Imperial Window Glass Co. (C. C. A.) 224 F. 60; United States v. A. T. & S. F. Ry. Co. (C. C. A.) 270 F. 1; Stoffregen v. Moore (C. C. A.) 271 F. 680; Pennok Oil Co. v. Roxana Pet. Co. (C. C. A.) 289 F. 416; Geiger v. Tramp (C. C. A.) 291 F. 353; Highway Trailer Co. v. Des Moines (C. C. A.) 298 F. 71; Hirning v. Live Stock Nat. Bank (C. C. A.) 1 F.(2d) 307; Allen v. Cartan & Jeffrey Co. (C. C. A.) 7 F.(2d) 21; Lahman v. Burnes Nat. Bank (C. C. A.) 20 F.(2d) 897.

The rule is at once fair to the trial court, because attention is sharply and specifically called to the precise point involved; fair to opposing counsel, because it gives an opportunity to oppose the motion understandingly; fair to the appellate court, because it enables that court to see whether the point raised in that court is the same as that which was raised and passed upon by the trial court.

It is true that in most, if not all, of the cases above cited, either no motion at all was made at the close of the evidence, or no ruling and exception were had; nevertheless, the rule was announced.

Other cases recognizing the rule and holding that the ground was sufficiently stated in the motion are, Searcy County v. Thompson (C. C. A.) 66 F. 92, 97, dissenting opinion; Union County Bank v. Ozan Lumber Co. (C. C. A.) 179 F. 710; International Harvester Co. v. Langermann (C. C. A.) 262 F. 498; Ozark Pipe Line Corp. v. Decker (C. C. A. opinion filed March 27, 1929) 32 F.(2d) 66.

In the recent case Denver Live Stock Commission Co. v. Lee (C. C. A.) 18 F.(2d) 11, rehearing (C. C. A.) 20 F.(2d) 531, a general motion was involved. The court announced and enforced the rule, although the point was not raised by opposing counsel.

We are aware that there has been a conflict in the decisions of this court on the subject. McDowell v. United States (C. C. A.) 257 F. 298, held that a general motion was sufficient. The decision in that case, however, might well have been placed upon the ground that in a criminal case the appellate court may of its own volition notice a plain error, although no motion, ruling, and exception were had relative thereto. The cases Lynch v. Darnell (C. C. A.) 265 F. 913, and Choctaw O. & G. R. Co. v. Jackson (C. C. A.) 192 F. 792, also recognize the practice upheld in the McDowell Case.

We are also aware that there is a conflict between the decisions of some of the other circuits on the question of the sufficiency of a general motion. In the Sixth Circuit it is held that a general motion is sufficient. Louisville & N. R. Co. v. Womack, 173 F. 752. The Ninth Circuit is inclined to the same view. Balaklala Consol. Copper Co. v. Reardon, 220 F. 584, 589. On the other hand, the Seventh Circuit holds that a general motion is not sufficient. Adams v. Shirk (C. C. A.) 104 F. 54.

After mature deliberation we have concluded to adhere to the rule announced in this circuit in the long line of decisions first above cited, and lately reaffirmed in the Denver Live Stock Commission Co. Case, and to hold that the rule stated in McDowell v. United States, supra, is no longer the law in this circuit.

In view of the conflict in the decisions of our own circuit heretofore existing, however, we have in the case at bar, despite the nonobservance of the rule, considered the evidence and find that there is substantial evidence to support the verdict. It would serve no useful purpose to discuss it.

One of the questions challenged under the second specification of error was asked Mr. Arthur Hawkins, an experienced millwright having supervision in the mill of defendant, and who was called as a witness for plaintiff. The question and answer were as follows:

"Q. Will a belt sometimes crawl, Mr. Hawkins, or move when around a revolving line shaft? A. Yes, sir; I have seen it done."

When this question was asked, the testimony of the witness had already shown that this same belt had on former occasions run off the pulley and wrapped itself around the main line shaft. Defendant, in an endeavor to show that if such an occurrence had taken

place, the winding around the shaft happened immediately after the belt ran off the pulley, had asked the witness:

"Q. I will ask you, suppose a belt was lying on the line shaft idling and had been idling that way several minutes, would that cause it suddenly to catch up and throwing the belt over like this one was? A. Well, I have seen it done.

"Q. It would catch up? A. Yes, sir."

It was in explanation of this last testimony that plaintiff asked the witness the question to which objection was taken. The court very aptly said:

"The Court: The substance of that question is this, as I understand it, if the shaft is moving continually, if the belt is on the shaft, [and] whether or not in the experience of the witness in such a situation the belt is off the pole [pulley], it will remain in one position all the time. Now, I do not see anything objectionable about that. The objection is overruled."

We think in view of the prior testimony of the witness and especially that which had been brought out by defendant, the question was a proper one.

■ Another item of evidence, the admission of which is challenged, is shown by the following excerpt from the record, C. C. Horton, father of the plaintiff, testifying:

"Q. Do you remember noticing any difference in the condition of your son now and before he got this injury to his head?

"Mr. Godwin: He went over that.

"A. Yes, sir; a marked difference.

"Q. Tell the jury why you say it is marked and how it is marked.

"A. Well, I will try to make a long story as short as possible. In the first place, before he got hurt he was a Ford mechanic. A pretty fair one, in fact he done any work to a Ford car. He had torn in two all the parts and repaired it. Since he got hurt he has a car that he brought from Chicago with him last fall. I drive it. It needs some work done on it in the rear end, the differential, a day's work. I knew that he had done that work before and I asked him to do this work for me while he (* * *) not able to do anything else, just take it out leisurely and take his own good time to fix it. He sat there and studied a while and he said, 'Papa—'

"Mr. Godwin: I object to any conversation between them.

"The Court: Objection overruled.

"Mr. Godwin: Exception.

"A. (continuing) He says: 'Papa, I don't remember ever tearing into that; I don't know how to fix it.'"

The question at issue was whether the mental state of plaintiff especially as regards his memory, was different after the accident from what it was before the accident. Testimony had been given by two other witnesses that plaintiff's memory before the accident was good, but that since the accident it was poor. This testimony was admitted without objection. The testimony objected to was cumulative of the prior testimony, and simply confirmed and strengthened it by relating illustrative verbal acts on the part of the plaintiff upon which the conclusion of the witness was based. We think there was no error in admitting the testimony. 22 C. J. § 697, p. 604; Jones on Evid. (3d Ed.) § 360; Chamberlayne's Hand Book on Evid. §§ 678, 692, 693.

■ Appellant contends under its third specification of error that: "The trial court erred in refusing to give to the jury an instruction on the comparative negligence doctrine applicable in the State of Arkansas, and in refusing to instruct the jury that if the injury resulted from anything done by appellee, or Walter Steele, appellee could not recover for the reason that no negligence was alleged in the complaint with reference to the conduct of either of said parties."

It is to be noted, first, that this alleged error covers at least three distinct propositions; second, that no request was prepared and submitted to the trial judge on the several matters included in this alleged error; third, that the assignment of error itself on which the above quoted statement from the brief of defendant is based, begins as follows:

"11. The court erred in its instructions to the jury and in refusing to instruct the jury as requested, as follows:

"'Mr. Tompkins: Your honor has not instructed on comparative negligence.

"'The Court: Has there been any proof on comparative negligence? I will give an instruction on comparative negligence. I would like to ask Mr. Godwin if he contends that the plaintiff was guilty of contributory negligence.

"'Mr. Godwin: I will say that we do not contend, there was no direct evidence to that effect.'"

Then follow two pages of colloquy between court and counsel for both parties touching assumption of risk, duty of inspection, negligence of Steele, negligence of plaintiff. Nowhere is a distinct instruction requested by defendant either on the subject

855

of comparative negligence, or of the negligence of Steele, or of the negligence of plaintiff, followed by a refusal of the court to give such instruction, followed by an exception by counsel for defendant. These steps were necessary in order to lay the foundation for a proper assignment of error, especially in view of the fact that the court stated that he did not believe that there was any evidence to warrant an instruction on contributory negligence.

In civil cases, especially if the court's charge has not properly covered all the points in the case, the court's attention should be called thereto, and an instruction presented covering the point in question, and an exception taken to its refusal. Hodge v. Chicago & A. R. Co., 121 F. 48 (C. C. A. 8). Only by taking such steps can the requirements of rule 11 of this court be fulfilled.

Such steps were not taken in the case at bar.· The defendant is therefore not in a position to urge error in respect to this particular matter.

Judgment affirmed.