**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: October 27, 2021
Date Decided: November 9, 2021

Michael A. Barlow, Esquire
Samuel D. Cordle, Esquire
Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, Delaware 19807

Raymond J. DiCamillo, Esquire
John M. O'Toole, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, Delaware 19801

RE:   *SerVaas et al. v. Ford Smart Mobility LLC, et al.*,
      C.A. No. 2020-0909-LWW

Dear Counsel:

This decision resolves two motions to compel filed by the plaintiffs.

One of the motions asks that the defendants be ordered to produce certain privileged documents created while two of the plaintiffs were directors of a defendant company. The plaintiffs maintain that they are entitled to the documents regardless of whether they seek them in their individual—rather than fiduciary—capacities. Directors of Delaware corporations possess broad information rights subject to narrow limitations not implicated here. But those rights spring from a board's duty to manage and oversee a company. Because the plaintiffs' request is unrelated to the principles underlying directors' information rights and in

furtherance of personal money damages claims against the corporation, that motion is denied.

The plaintiffs' other motion contends that the defendants waived privilege by over-designating documents on their privilege log and putting at issue the company's investigation into the plaintiffs' alleged misconduct. Because the defendants cured the problems with their privilege log, I decline to order that all previously withheld documents be produced but shift fees up to $5,000. As to the investigation-related documents, I conclude that the defendants must produce documents about factual issues but can continue to withhold legal advice.

## I.     BACKGROUND

Plaintiffs Peter SerVaas, Ilya Rekhter, Justin Rees, and Kelly Rees are the founders and former owners of two start-ups that merged under defendant Journey Holding Corp. ("Journey").[1]  In July 2019, defendant Ford Smart Mobility LLC ("Ford Smart") purchased Journey from the plaintiffs.[2]  SerVaas and Justin Rees served as directors of Journey and its subsidiary TransLoc, Inc. after the

---

[1] Verified Compl. (hereinafter "Compl.") ¶¶ 6-8, 10-12, 21 (Dkt. 1).  For a more detailed discussion of the underlying facts in this action, see the court's August 25, 2021 motion to dismiss decision.  *SerVaas v. Ford Smart Mobility LLC*, 2021 WL 3779559 (Del. Ch. Aug. 25, 2021).

[2] Compl. ¶¶ 10, 25-26.

acquisition.[3] SerVaas was removed from Journey's board on March 9, 2020 and TransLoc's board on March 25, 2020.[4] Rees remained a member of both boards until his termination in June 2020.[5]

On June 23, 2020, Ford Smart terminated each of the plaintiffs, purportedly for cause.[6] Ford Smart cited fraud and misappropriation of company resources, among other things, as the grounds.[7] The plaintiffs' terminations occurred one month before a portion of their deferred consideration from the Journey acquisition was scheduled to vest.[8]

On October 22, 2020, the plaintiffs filed an action in this court alleging wrongful termination and seeking approximately $12 million in deferred consideration.[9] The plaintiffs' complaint advanced claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment,

---

[3] *Id.* ¶¶ 6, 32-34; Answer to Compl. ¶¶ 33, 38 (Dkt. 12).

[4] Pls.' Mot. to Compel Produc. of Allegedly Privileged Docs. (hereinafter "Pls.' Second Mot."), Exs. A, B (Dkt. 76). There is some debate regarding whether SerVaas was removed from the boards in March or June 2020. *See* Pls.' Second Mot. ¶ 6.

[5] *Id.* ¶ 6; Defs.' Consolidated Br. in Opp'n to Pls.' Mots. to Compel Produc. of Privileged Docs. (hereinafter "Defs.' Consol. Opp'n"), Ex. B (Dkt. 93).

[6] Compl. ¶ 36.

[7] *Id.* ¶ 37.

[8] *Id.* ¶¶ 35-36.

[9] *Id.* ¶¶ 1-3, 28.

and violations of the Delaware Wage Payment and Collection Act.[10]  On August 25, 2021, I dismissed the latter two claims.[11]  The parties are currently engaged in discovery, with trial scheduled for June 2022.

Pending before the court are two motions to compel filed by the plaintiffs. The Motion to Compel Production of Non-Privileged Documents (the "First Motion"), filed on September 17, 2021, challenges multiple categories of documents on the defendants' August 2021 privilege log.  For example, the defendants had logged as attorney-client privileged documents that: omitted sender or recipient information or the identity of counsel; failed to describe the involvement of counsel; included the plaintiffs on the communication; or related to the investigation of the plaintiffs' alleged misconduct before their termination.[12] The defendants issued several amended privilege logs and made supplemental productions—including after opposing the First Motion—in an effort to remedy those deficiencies.  The plaintiffs ask that the court deem privilege waived due to the defendants' "unreasonable positions" and dilatory corrections to their privilege

---

[10] *Id.* ¶¶ 115-87.

[11] *Ford Smart*, 2021 WL 3779559, at *11.

[12] Pls.' Mot. to Compel Produc. of Docs. on Defs.' Privilege Log (hereinafter "Pls.' First Mot.") ¶¶ 3-5, 15 (Dkt. 73).

log.[13] The only category of documents that remains in dispute concerns investigation-related documents that the plaintiffs maintain have been put at issue in this action.

The plaintiffs' Motion to Compel Production of Allegedly Privileged Documents (the "Second Motion"), filed on September 30, 2021, seeks the production of all Journey and TransLoc privileged documents from the period when SerVaas and Justin Rees served as directors.[14] The defendants assert that former directors are not entitled to a corporation's privileged documents when suing in their individual capacities. The plaintiffs disagree, contending that no such exception exists to a director's broad right of access to corporate documents.

I will begin by discussing the Second Motion and then address the First Motion. For the reasons discussed below, both Motions are denied except for limited relief granted with regard to the First Motion.

## II. ANALYSIS

### A. The Plaintiffs Cannot Obtain Company Privileged Documents to Pursue Their Personal Claims.

As a general rule, a corporation cannot assert attorney-client privilege "to deny a director access to legal advice furnished to the board during the director's

---

[13] Pls.' Reply Br. in Further Supp. of Their Mots. to Compel (hereinafter "Pls.' Reply") 20 (Dkt. 100).

tenure."[15] A director's right to information is "essentially unfettered in nature," subject to three exceptions recognized in *Kalisman v. Friedman*.[16] First, a "director's right can be diminished 'by an *ex ante* agreement among the contracting parties.'"[17] Second, the board can form a special committee excluding a director, and that committee is "free to retain separate legal counsel, and its communications with that counsel would [be] properly protected."[18] Third, privileged information can be withheld from a director "once sufficient adversity exists between the director and the corporation such that the director could no longer have a reasonable expectation that he was a client of the board's counsel."[19]

The defendants do not meaningfully argue that any of these three exceptions apply.[20] As a result, the plaintiffs contend that SerVaas and Justin Rees have

---

[14] *See* Pls.' Second Mot. 1-2.

[15] *Moore Bus. Forms, Inc. v. Cordant Hldgs. Corp.*, 1996 WL 307444, at *4 (Del. Ch. June 4, 1996).

[16] 2013 WL 1668205, at *3 (Del. Ch. Apr. 17, 2013) (quoting *Schoon v. Troy Corp.*, 2006 WL 1851481, at *1 n.8 (Del. Ch. June 27, 2006)); *see Intrieri v. Avatex Corp.*, 1998 WL 326608, at *1 (Del. Ch. June 12, 1998) (stating that there is a "presumption that a sitting director is entitled to unfettered access to the books and records of the corporation . . . and certainly . . . to . . . whatever the other directors are given").

[17] *Kalisman*, 2013 WL 1668205, at *4 (quoting *Moore*, 1996 WL 307444, at *5).

[18] *Id.* at *5 (quoting *Moore*, 1996 WL 307444, at *6).

[19] *Id.*

[20] The defendants assert that adversity was present because Justin and Kelly Rees knew by February 2020 that the company was inquiring into the propriety of certain expenditures. *See* Defs.' Consol. Opp'n 4-5. The defendants also argue that standard

unrestricted access to Journey and Transloc's privileged documents from the time when they were directors.[21] But a litigant's status as a director does not automatically entitle him to all legal advice rendered to a corporation "irrespective of the circumstances."[22] In my view, granting the plaintiffs access to company privileged material to pursue personal breach of contract claims would be inconsistent with the purpose of director information rights.

A director's right to information is "correlative with his duty to protect and preserve the corporation."[23] Members of a board are charged with "the proper management of the corporation" and "treated as the 'joint client' when legal advice

---

confidentiality agreements are *ex ante* waivers of the plaintiffs' rights to seek privileged information. *Id.* at 19-20. Neither argument is persuasive. A conversation between Kelly Rees and a human resources manager months before the plaintiffs' terminations did not create a reasonable expectation of adversity. And the confidentiality agreements govern materials post-dating the plaintiffs' terminations—not those from when SerVaas and Justin Rees were directors.

[21] Pls.' Reply 3-4 (asserting that finding otherwise would create a fourth exception unrecognized in *Kalisman*).

[22] *See SBC Interactive, Inc. v. Corp. Media P'rs*, 1997 WL 770715, at *5 (Del. Ch. Dec. 9, 1997) ("No Delaware authority cited to this Court holds that a litigant's status as a general partner, without more and irrespective of the circumstances, automatically entitles it to all advice rendered by counsel to the Partnership.").

[23] *Henshaw v. Am. Cement Corp.*, 252 A.2d 125, 128 (Del. Ch. 1969); *see Holdgreiwe v. Nostalgia Network, Inc.*, 1993 WL 144604, at *3 (Del. Ch. Apr. 29, 1993) ("The rights of directors to access the corporate books and records are recognized by Delaware law as of fundamental importance and a necessary concomitant to the imposition upon directors of fiduciary duties."); *Intrieri*, 1998 WL 326608, at *2 (explaining that directors may have a right to access information created before their tenure because a rule otherwise "would have the potential to hinder a director's ability to perform his fiduciary duties").

is rendered to the corporation through one of its officers or directors."[24]  Under the Delaware Rules of Evidence, there is "no privilege" for communications "relevant to a matter of common interest between or among [two] or more clients if the communication was made by any of them to a lawyer retained or consulted in common, when offered in an action between or among any of the clients."[25]  This joint client relationship arises from "the imposition upon directors of fiduciary duties" and directors' central role in the management of a corporation's business. [26] The privilege exists for the benefit of the corporation—not for any particular corporate constituency (such as an individual director).[27]  A corporation's agents—

---

[24] *Moore*, 1996 WL 307444, at \*4 (quoting *Kirby v. Kirby*, 1987 WL 14862, at \*7 (Del. Ch. July 29, 1987)).

[25] D.R.E. 502(d)(6).

[26] *Holdgreiwe*, 1993 WL 144604, at \*3; *see also Kirby*, 1987 WL 14862, at \*7 ("The directors are all responsible for the proper management of the corporation, and it seems consistent with their joint obligations that they be treated as the 'joint client' when legal advice is rendered to the corporation through one if its directors or officers."); *In re WeWork Litig.*, 250 A.3d 901, 910 (Del. Ch. 2020) ("It is because 'directors are responsible for the proper management of the corporation' that they should 'be treated as a joint client when legal advice is rendered to the corporation through one of its directors or officers.'" (quoting *Kalisman*, 2013 WL 1668205, at \*4)); *id*. at 911 ("[D]irectors of a Delaware corporation are presumptively entitled to obtain the corporation's privileged information as a joint client of the corporation . . . ."); Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 7.02[e] (2021) (explaining that "the rationale underlying" directors' information rights is that all directors are "responsible for the proper management of the corporation").

[27] *See Cole v. Wilmington Mat'ls, Inc.*, 1993 WL 257415, at \*1 (Del. Ch. July 1, 1993) ("It is elementary that when they represent a corporation, lawyers represent the entity and do not thereby represent any single corporate constituency."); Paul R. Rice, *Attorney-Client Privilege in the United States* § 4.21 (2020) ("The individuals speaking to

*i.e.*, its officers and directors—exercise that privilege, but they must do so "in a manner consistent with their fiduciary duty to act in the best interests of the corporation and not of themselves as individuals."[28]

In *Kalisman*, for example, a dissident director pursuing direct and derivative claims to prevent a corporate transaction was granted access to legal advice delivered to the board because of his "right of equal access to the material he [sought] *in his capacity as a director* . . . and in light of his status as a joint client of the subpoenaed law firms."[29]  In *WeWork*, members of a special committee pursing litigation on behalf of a company were granted access to privileged corporate communications based on the "cardinal precept" of Delaware law that directors are charged with overseeing the corporation.[30]

Here, SerVaas and Justin Rees are not acting to further the interests of Journey, Transloc, or their stockholders.  Nor are they disputing their removals from the boards, as in *Kirby v. Kirby*, where former directors were given access to

---

corporate counsel for the corporation are not themselves clients of corporate counsel. Therefore, the privilege may only be asserted by or for the benefit of the corporation.").

[28] *Zirn v. VLI, Corp.*, 621 A.2d 773, 781 (Del. 1993) (quoting *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985)).

[29] 2013 WL 1668205, at *2-3.

[30] 250 A.3d 901, at 902, 910.

privileged documents.[31]   Rather, the plaintiffs are pursuing individual breach of

contract claims against Ford Smart and Journey.  The plaintiffs had no reason to

believe that they were "joint clients" of company counsel with regard to the issues

underlying those claims—namely, their alleged misconduct, terminations, or

entitlement to deferred consideration.[32]  As then-Vice Chancellor Jacobs explained

in *Moore*:

> Although the *Kirby* Court described the directors as a "joint client," a
> more accurate description of the relationship is that there was a single
> "client," namely, the entire board, which includes all its members.
> That is, a director seeking information furnished to the board that is
> the subject of the privilege claim is a "client" *not in his or her
> individual capacity*, but as a member of the collective body (the
> board) of which the director is one member.[33]

---

[31] 1987 WL 14862, at *1, *7 (Del. Ch. July 29, 1987) (finding former directors entitled to privileged documents where they asserted they had not been properly removed and sought a determination that they remained directors under 8 *Del. C.* § 225); *see also Produced Water Transfer, LLC v. Pilot Water Sol'ns LLC*, 2021 WL 2940528, at *1 (Del. Ch. July 9, 2021) (ORDER) (granting a minority member's motion to compel documents generated during its director representative's tenure where the minority member's interests, and thus the status of its director representative, were in dispute); *Rainbow Navigation, Inc. v. Yonge*, 1988 WL 7389, at *1 (Del. Ch. Jan. 29, 1988) (ordering production of privileged communications where there was a dispute over who constituted the board pending a determination of its composition); *In re Howard Midstream Energy P'rs, LLC*, 2021 WL 4314111 (Del. Ch. Sept. 22, 2011) (finding former directors contesting their removal not entitled to privileged documents prepared during their tenure where they were adverse to the company).

[32] *Cf. Ryan v. Gifford*, 2008 WL 43699, at *5 (Del. Ch. Jan. 2, 2008) (finding privilege broken where director defendants received purportedly privileged information in their individual capacities rather than in their fiduciary capacities).

[33] *Moore*, 1996 WL 307444, *4 n.4 (emphasis added).  The court also distinguished a federal case where a director "did not assert his claim in his capacity as a director" but

The plaintiffs contend that this court has previously ordered the production of privileged documents to directors who were pursuing individual claims.[34] But the cases cited by the plaintiffs are inapposite.

In *Moore*, a stockholder sued to challenge the defendants' repurchase of its preferred stock and to contest a corporation's refusal to seat its designee on a board. The court held that the stockholder was entitled to the same privileged information as its board designee, who had been deprived of information furnished to the rest of the board about the parties' contractual dispute.[35] In *Gilmore v. Turvo*, the court held that a director and recently terminated CEO seeking reappointment was not entitled to legal advice given to other directors.[36] In addition to finding no predicate attorney-client relationship between counsel and the board, the court found that the former CEO had no common interest with the

---

primarily in his capacity as a stockholder. *Id.* at n.5. Other courts have interpreted *Moore* to stand for the proposition that a distinction should be drawn between former directors acting as individuals and those acting in their fiduciary capacity. *See Am. S.S. Owners Mut. Protection & Indem. Ass'n, Inc. v. Alcoa S.S. Co., Inc.*, 232 F.R.D. 191 (S.D.N.Y. 2005) (citing *Moore* and discussing the "distinction between a board member's personal role and his role as a director"). The plaintiffs argue that the analysis in *American S.S. Owners* was rejected by this court in *Kalisman*. But, in *Kalisman*, the court recognized that a board majority could not invoke privilege against a fellow director—not that the director's fiduciary capacity is irrelevant to the analysis. *Kalisman*, 2013 WL 1668205, at *4.

[34] Pls.' Reply 4-5.

[35] *Moore*, 1996 WL 307444, at *4 n.4.

[36] 2019 WL 3937606, at *2-3 (Del. Ch. Aug. 19, 2019).

other directors, who retained counsel to aid in the investigation of his potential wrongdoing.[37] And in *Oxbow Carbon*, the court held that a corporation could not assert privilege against director designees where the directors were alleged to have breached fiduciary duties but the court could not conclude that they were acting disloyally.[38]

SerVaas and Justin Rees are not claiming that certain documents were shared with other board members during their tenure but withheld from them.[39] They do not contend that the documents at issue would have allowed them to act as fully-informed directors. They are not invoking their former fiduciary capacities in this action. Rather, the plaintiffs seek discovery of company-privileged information to pursue individual breach of contract claims against Journey and

---

[37] *Id.*

[38] *In re Oxbow Carbon LLC*, 2017 WL 898380, at *1 (Del. Ch. Mar. 17, 2017); *see also AOC Ltd. P'ship v. Horsham Corp.*, 1992 WL 97220, at *1 (Del. Ch. May 5, 1992) (resolving motion to compel privileged documents in a dispute among directors about a proposed initial public offering).

[39] *See In re CBS Corp. Litig.*, 2018 WL 3414163, at *5 (Del. Ch. July 13, 2018) (explaining that directors may be entitled to "access the privileged information provided to the other directors"); *Gilmore*, 2019 WL 3937606, at *2 (stating that, where a director seeks privileged information on the ground that she is a joint client, "there is an important condition:" the "legal advice be furnished *to the board*"); *SBC Interactive*, 1997 WL 770715, at *5.

Ford Smart.[40]  They cannot invade the corporations' attorney-client privilege in furtherance of their personal litigation.[41]

### B.     The Defendants Have Not Put Legal Advice Provided During the Investigation "At Issue."

The only contested issue remaining in the plaintiffs' First Motion is whether the defendants have put legal advice about their investigation into the plaintiffs' misconduct at issue.  Because the defendants are relying on the information purportedly uncovered during that investigation to argue that the terminations were for "Cause" (removing the plaintiffs' entitlement to deferred consideration), the plaintiffs seek the production of the underlying documents.

A party places its attorney-client communications at issue by injecting (1) "the privileged communications themselves into the litigation," or (2) "an issue into the litigation, the truthful resolution of which requires an examination of confidential communications."[42]  "Application of the at-issue exception is a fact-specific inquiry" intended to prevent a party from making factual assertions that go to the heart of a dispute while claiming that privilege prevents the opposing party

---

[40] *See Intrieri*, 1998 WL 326608 (holding that privilege could be asserted against a director for legal advice furnished to the company before the director's tenure where the advice related to a matter in which the director had a personal interest).

[41] Because I conclude that the plaintiffs are not entitled to the privileged information they seek, I need not address the remaining arguments in the Second Motion.

[42] *Alaska Elec. Pension Fund v. Brown*, 988 A.2d 412, 419 (Del. 2010).

from taking full discovery into the issue.[43]   "Put simply, a party cannot use privilege as both a sword and a shield."[44]

The findings of the investigation into the plaintiffs' alleged misconduct appear central to this case.[45]  The defendants have asserted that "the investigation of the [plaintiffs] . . . ultimately led to the termination of their employment."[46] Documents regarding factual aspects of the investigation are not privileged.[47] They must be produced and cannot be withheld simply because counsel was involved in the investigation.[48]  At the present stage in the litigation, however, the

---

[43] *Id.*

[44] *Drachman v. BioDelivery Scis. Int'l, Inc.*, 2021 WL 3779539, at *7 (Del. Ch. Aug. 25, 2021) (citing *La. Mun. Police Empls.' Ret. Sys. v. Crawford,* C.A. Nos. 2635-N & 2663-N (Del. Ch. Jan 26, 2007)); *see also Sealy Mattress Co. of N.J., Inc. v. Sealy Inc.*, 1987 WL 12500, at *6 (Del. Ch. June 19, 1987) ("As a general matter, a party cannot take a position in litigation and then erect the attorney-client privilege in order to shield itself from discovery by an adverse party who challenges that position.").

[45] *E.g.*, Defs.' Opening Br. in Supp. of Their Partial Mot. to Dismiss 10 (Dkt. 10) ("Ford fired Plaintiffs for cause after uncovering misconduct by teach of them."); Defs.' Reply Br. in Supp. of Their Partial Mot. to Dismiss 1 (Dkt. 29).

[46] Pls.' First Mot. ¶ 20 (quoting Pls.' First Mot., Ex. P at 74).

[47] *See Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981) ("[T]he protection of the privilege extends only to *communications* and not to facts.  A fact is one thing and a communication concerning that fact is an entirely different thing." (quoting *Philadelphia v. Westinghouse Elec. Corp.*, 205 F. Supp. 830, 831 (E.D. Pa. 1962))).

[48] *See Akorn Inc. v. Fresenius Kabi A.G.*, C.A. 2018-0300-JTL, at 75 (Del. Ch. May 22, 2018) (TRANSCRIPT) (explaining that involving lawyers to investigate factual matters does not shield the investigation from discovery).  The defendants' counsel previously asserted that there was a "large volume of attorney-client privileged communications at issue" because "counsel was involved in the investigation of the Plaintiffs' misconduct

defendants have not placed at issue the legal advice rendered during that investigation.[49] Specific legal advice about the investigation that meets the narrow requirements of attorney-client privilege under Delaware law may continue to be withheld.[50]

Regrettably, the defendants failed to produce investigation-related materials until after the First Motion was filed. Since then, they have produced hundreds of

---

that led to their terminations." Pls.' First Mot., Ex. E at 1. Counsel's involvement alone does not create privilege.

[49] *See Grunstein v. Silva*, 2012 WL 5868896, at *1 (Del. Ch. Nov. 20, 2012) ("The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." (quoting *Rhone-Poulenc Rorer Inc. v. Home Indem. Co*., 32 F.3d 851, 863 (3d Cir. 1994))); *see also Rhone-Poulenc Rorer*, 32 F.2d 851, 863-64 (holding that no "at issue" waiver had occurred where CEO testified about facts learned from investigation led by outside counsel because the party could not "refuse to disclose facts simply because that information came from a lawyer").

[50] *E.g.*, *BioDelivery*, 2021 WL 3779539, at *7-8 (finding that legal advice had not been put at issue where the defendants had relied on the advice of a proxy advisor but not counsel); *In re Quest Software Inc. S'holders Litig*., 2013 WL 3356034, at *3 (Del. Ch. July 3, 2013) (explaining that the examination of privileged communications is not required for the truthful resolution a litigation where parties "merely seek to rely on the fact that they sought and obtained legal advice rather than that they relied on the substance of privileged communications" (quoting *In re Comverge, Inc. S'holders Litig*., 2013 WL 1455827, at *3 (Del. Ch. Apr. 10, 2013))); *see also Welland v. Trainer,* 2001 WL 1154666, at *1 (S.D.N.Y. Oct. 1, 2001) ("[T]he nature and sufficiency of the investigation is not raised by Defendants' counterclaim . . . . Defendants are relying only on the facts discovered through interviewing witnesses and reviewing documents, and therefore they have not waived any privileges . . . ."); *cf. Oxbow Carbon*, 2017 WL 959396, at *3, *5 (explaining that a private investigator's findings had been put at issue in "various submissions to the court" and could not be withheld as privileged where there was a "sufficient evidentiary basis to hold that the privilege and work product doctrine d[id] not extend" to the materials).

documents pertaining to the investigation, including emails, interview memoranda, and an investigation report.[51] For the remaining documents that have been redacted or withheld, counsel for the defendants (including Delaware counsel) are directed to re-review their privilege designations. After doing so, they must confirm to the plaintiffs that all non-privileged information has been produced or, if information was withheld that should not have been, promptly produce it.

## C. A Broad Privilege Waiver Is Not an Appropriate Remedy.

Finally, the plaintiffs argue that the court should find that "waiver is the consequence" for the defendants' failure to adequately support their privilege designations before the First Motion was filed.[52] At a minimum, privilege logs should: list the date of the communication; identify the sender, recipient, and counsel whose advice is being received, requested, or relayed along with (either on the face of the log or in an accompanying key) an explanation of those individuals' roles; explain the grounds for withholding; and detail the subject of the communication in order to demonstrate how the privilege applies.[53] The

---

[51] Mots. to Compel Hr'g Tr. Oct. 27, 2021, at 7, 41-42 (Dkt. 107).

[52] Pls.' Reply 20.

[53] *See Ryan v. Gifford*, 2007 WL 4259557, at *1 (Del. Ch. Nov. 30, 2007) (ordering party to provide an updated privilege log "identifying each document for which it claims privilege . . . as well as the document's date, author, recipients, and a brief description of the precise privilege relied upon as a basis for withholding the document"); *Reese v. Klair*, 1985 WL 21127, at *5 (Del. Ch. Feb. 20, 1985) ("The documents must be

defendants' original privilege log—and subsequent attempts at amendment—fell short of this minimum. The most basic information was absent in many instances, including sender and recipient information, the identity of counsel, and the grounds for withholding.

Beyond that, the defendants initially withheld as privileged *all* of Ford Smart's General Counsel's responsive communications. It seems improbable that each of those communications was properly withheld given that in-house counsel often straddles business and legal roles. An in-house counsel's business communications should not be withheld as privileged.[54] The defendants' log also withheld many documents already received by one of the plaintiffs, which were not "confidential" communications under Delaware Rule of Evidence 502(b).

---

precisely enough described to bring them within the rule or the court has no basis upon which to weigh the application of the privilege[]."); *Mechel Bluestone, Inc. v. James C. Just. Cos.*, 2014 WL 7011195, at *4 (Del. Ch. Dec. 12, 2014) (describing the expectations for privilege logs in this court); *Unisuper Ltd. v. News Corp.*, C.A. No. 1699-CC, at 1 (Del. Ch. Mar. 9, 2006) (explaining that a privilege log must include the "date," "parties to the communication" and their positions, "names of the attorneys," and "[a description of] the subject of the communication sufficient to show why the privilege applies, as well as [the issue to which] it pertains"); Edward P. Welch, et al., *Mergers and Acquisitions Deal Litigation Under Delaware Corporate Law* § 9.02[E][1] (2020) ("[A] privilege log in Delaware typically provides the document's date, author and recipients, a brief description, the precise privilege relied upon as a basis for withholding the document, and a summary of the basis for asserting privilege.").

[54] *See Cephalon, Inc. v. Johns Hopkins Univ.*, 2009 WL 5103226, at *1 (Del. Ch. Dec. 4, 2009).

The defendants have (belatedly) remedied these issues through amended privilege logs and supplemental productions. Counsel for the defendants confirmed that a document-by-document review was conducted (that is, defendants did not withhold documents categorically), as this court expects, stressing that Delaware counsel was heavily involved in the privilege review and logging process.[55] I conclude that the privilege log, though deficient, was not created in bad faith. As a result, and because the plaintiffs have not identified any significant prejudice, I decline to deem the privilege waived.

I will, however, shift fees incurred in connection with the First Motion.[56] The defendants' original privilege logs did not meet this court's standards. The First Motion was almost entirely avoidable. Many deficiencies were not remedied until after the First Motion (and the defendants' opposition) had been filed. The defendants will therefore reimburse the plaintiffs for fees incurred in connection with the First Motion, capped at $5,000.

---

[55] Mots. to Compel Hr'g Tr. Oct. 27, 2021, at 45-46.

[56] *See Pfeiffer v. CA, Inc.*, C.A. No. 4195-CC, at 2 (Del. Ch. July 2, 2009) ("I [will not] hesitate to shift attorneys' fees if documents claimed to be privileged are found not to be privileged."); *Senior Hous. Cap., LLC v. SHP Senior Hous. Fund, LLC*, C.A. No. 4586-CS, at 20, 24 (Del. Ch. July 20, 2012) (TRANSCRIPT) (declining to find a privilege waiver due to an inadequate privilege log but awarding attorneys' fees); Welch et. al, *supra* note 53, § 9.02[E][2] (explaining that the court "may shift attorneys' fees if it concludes that items designated on a privilege log are not actually privileged").

## III. CONCLUSION

The plaintiffs' Second Motion to compel is denied. The First Motion is also denied, except that the defendants' counsel shall re-review the withheld and redacted investigation-related documents consistent with this decision and reimburse the plaintiffs' fees and expenses up to $5,000.

Sincerely yours,

*/s/ Lori W. Will*

Lori W. Will
Vice Chancellor

cc: All counsel of record (by *File & ServeXpress*)